Mrs. Lorena W. **WEEKS**, Appellant,

v.

**SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY**, Appellee.

**SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY**, Appellant,

v.

Mrs. Lorena W. **WEEKS**, Appellee.

No. 25725.

United States Court of Appeals
Fifth Circuit.

March 4, 1969.

Rehearing Denied March 28, 1969.

Sylvia Roberts, Baton Rouge, La., Marguerite Rawalt, Arlington, Va., for appellants.

David J. Heinsma, Augusta, Ga., Hull, Towill & Norman, Augusta, Ga., of counsel, for appellee.

Before WISDOM and AINSWORTH, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge:

This appeal and cross-appeal present important unsettled questions concerning the proper interpretation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. Mrs. Lorena W. Weeks brought this suit against her

employer, Southern Bell Telephone & Telegraph Company (hereinafter Southern Bell) pursuant to 42 U.S.C. Sec. 2000e–5(e). Mrs. Weeks, an employee of the Company for 19 years, claims that the Company's refusal to consider her application for the position of switchman constituted discrimination based solely on sex, in violation of 42 U. S.C. Sec. 2000e–2. She prayed that she be awarded the position and damages and that Southern Bell be permanently enjoined from such unlawful employment practices.

The record reveals that Mrs. Weeks submitted her bid for the job of switchman on March 17, 1966. On April 18, 1966, the Company returned her bid with a letter advising her that it had decided not to assign women to the switchman's job. On June 2, 1966, Mrs. Weeks filed a written but unsworn charge with the Equal Employment Opportunity Commission (hereinafter the Commission). A representative of the Commission secured a sworn charge from Mrs. Weeks on July 30, 1966. After investigation of the facts and analysis of the duties of the position of switchman, the Commission decided that there was reasonable cause to believe that the Company had violated the Act. Mrs. Weeks was informed on April 19, 1967, that conciliation efforts with Southern Bell had failed and that she had 30 days within which to file suit. As authorized by Section 2000e–5(e) of the Act, the District Court relieved Mrs. Weeks of the payment of costs and appointed counsel for her. Counsel filed suit on her behalf on May 18, 1967.

1. Section 2000e–5 provides in pertinent part:

"(a) Whenever it is charged in writing under oath by a person claiming to be aggrieved, * * * that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization

## I

The Company moved to dismiss or in the alternative for summary judgment on the theory that since the alleged unlawful practice occurred on April 18, 1966, and a sworn charge was not filed with the Commission until July 30, 1966, the requirements of Section 2000e–5(a) and (d) [1] that the sworn charge be filed within 90 days had not been met and the District Court lacked jurisdiction. The contention that the District Court's overruling of this motion was error is the basis for the Company's cross-appeal.

The District Court, in effect, sustained the validity of a Commission regulation which permits amendments to the charge more than 90 days after the unlawful practice, in this case on July 30, 1966. 29 C.F.R. 1601.11(b) provides:

"Notwithstanding the provisions of paragraph (a) of this section, a charge is deemed filed when the Commission receives from the person aggrieved a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments relate back to the original filing date."

The Commission has filed a brief amicus curiae urging that we sustain the regulation and affirm the District Court's holding on this point.

The only case supporting the Company's contention, Choate v. Caterpillar Tractor Co., 274 F.Supp. 776 (S.D.Ill.

* * * with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commission. * * * "

*    *    *    *    *

"(d) A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred * * *."

1967), has since been overruled by the Court of Appeals for the Seventh Circuit, 402 F.2d 357. In a strongly-worded opinion, Judge Swygert held:

"We are of the view that the district court was in error in holding that its jurisdiction to entertain the suit depended upon whether the charge of discrimination filed with the Commission was under oath. Basic to our view is the fact that the 'under oath' requirement relates to the administrative procedures which are conducted by the Commission and which precede any court action. The statute gives the Commission no enforcement powers through the adjudicatory process. It allows the Commission only to investigate charges and attempt to gain compliance by informal methods of conference, conciliation, and persuasion. Enforcement of the rights of aggrieved parties resides exclusively in the federal courts. When the statute is thus considered, it is clearer that the requirement for verification of charges lodged with the Commission relates solely to the administrative rather than to the judicial features of the statute. We believe that the provision is directory and technical rather than mandatory and substantive."

■ We agree with the Seventh Circuit and with the Commission that a complaint in writing timely received may be amended after the 90-day period so as to meet the requirements of 42 U.S.C. Sec. 2000e–5(a).[2]

What Chief Judge Brown, speaking for this circuit, expressed in a similar context seems relevant here:

"The legislative history is silent on the requisites of the charge. This is not unusual since the charge is the catalyst which starts the informal conciliation proceedings of EEOC. It is in keeping with the purpose of the Act to keep the procedures for initiating action simple. * * * For a lay-initiated proceeding it would be out of keeping with the Act to import common-law pleading niceties to this 'charge,' or in turn to hog-tie the subsequent lawsuit to any such concepts. All that is required is that it give sufficient information to enable EEOC to see what the grievance is all about." Jenkins v. United Gas Corp., 400 F.2d 28, 30 n.3 (5th Cir.1968).

■ Finally, while we think it is clear that the purpose of certain of the procedural requirements of Section 2000e–5 is to protect employers from unfounded charges and harassment, it is equally clear that the employer here was in no way bothered or prejudiced by the unsworn charge and that the employer did receive the protection envisaged by Congress. In its amicus brief the Commission makes clear that under its procedures unsworn charges are not served upon respondents and that the investigation does not commence until a sworn charge is served. On this question, the District Court is affirmed.

## II

Turning to the merits we observe that there is no dispute that Mrs. Weeks was denied the switchman's job because she was a woman, not because she lacked any qualifications as an individual. The job was awarded to the only other bidder for the job, a man who had less seniority than Mrs. Weeks. Under the terms of the contract between Mrs. Weeks' Union and Southern Bell, the senior bidder is to be awarded the job if other qualifications are met. Southern Bell, in effect, admits a prima facie vio-

2. District courts in this circuit have recently come to the same conclusion. See Georgia Power Co. v. EEOC, 295 F. Supp. 950 (N.D.Ga.1968); Russell v. Alpha Portland Cement Co., 58 CCH Lab.Cas. para. 9151, 69 L.R.R.M. 2256 (N.D.Ala.1968). In the *Georgia Power* Co. case Judge Smith observed that "there is long-standing authority, both state and federal, to the effect that verification is an amendable defect, even for technical common-law pleadings much less a citizen-drawn statement of grievance."

lation of Section 703(a) of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e–2(a), which provides in pertinent part:

"(a) Employer practices.

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex * * *; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's * * * sex, * * *."

Southern Bell's answer, however, asserts by way of affirmative defense that the switchman's position fits within the exception to the general prohibition of discrimination against women set forth in Section 703(e) (1), 42 U.S.C. Sec. 2000e–2(e) (1), which provides in pertinent part:

"(e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, * * * on the basis of his * * * sex, * * * in those certain instances where * * * sex, * * * is a *bona fide occupational qualification* reasonably necessary to the normal operation of that particular business or enterprise, * * *" (Emphasis added.)

The job description of the post of switchman reads as follows:

"Engaged in the maintenance and operation of dial central office equipment, test, power, frame, switch, and other telephone equipment, including the locating and correcting of faults; making adjustments, additions, repairs, and replacements; performing routine operation tests, etc., and working with test-desk, field, and other forces connected with central office work. Also operates and maintains, including adjusting and making repairs to or replacement of, air conditioning equipment, and performing other work as assigned in accordance with local circumstances and the current needs of the business."

■■■ We think it is clear that the burden of proof must be on Southern Bell to demonstrate that this position fits within the "bona fide occupational qualification" exception. The legislative history indicates that this exception was intended to be narrowly construed.[3] This is also the construction put on the exception by the Equal Employment Opportunity Commission.[4] Finally, when dealing with a humanitarian remedial statute which serves an important public purpose, it has been the practice to cast the burden of proving an exception to the general policy of the statute upon the person claiming it. Phillips Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1942).

The more important question that must be decided here, however, is the extent of the showing required to satisfy that burden. In the court below, Southern Bell contended that a bona fide occupational qualification was created whenever reasonable state protective legislation prevented women from occupying certain positions. Southern Bell relied upon Rule 59, promulgated by the Georgia Commissioner of Labor pursuant to Section 54–122(d) of the Georgia Code, which provides:

"*Lifting*. For women and minors, not over 30 pounds. Less depending on physical condition of women or mi-

3. For an interpretative memorandum by Senators Clark and Chase, floor managers of the bill, suggesting that Section 703(e) (1) creates a "limited exception," see 110 Cong.Rec. 7213 (1964). *See also* H.R.Rep.No. 914, 88th Cong., 1st Sess. (1963).

4. 29 C.F.R. Sec. 1604.1(a) (1968).

nors. Minor as used here means anyone under 18 years of age, male or females."

The Commission has recognized that reasonable state protective legislation may constitute a bona fide occupational qualification. Thus, Section 1604.1(3) of the Commission's guidelines provides:

"The Commission does not believe that Congress intended to disturb such laws and regulations which are intended to, and have the effect of, protecting women against exploitation and hazard. Accordingly, the Commission will consider qualifications set by such state laws or regulations to be bona fide occupational qualifications, and thus not in conflict with Title VII * * * so, for example, restrictions on lifting will be honored except where the limit is set at an unreasonably low level which could not endanger women."

Mrs. Weeks does not dispute on appeal that the position of switchman occasionally requires lifting of weights in excess of 30 pounds. She has consistently contended that the Georgia limit is unreasonably low and that the Georgia Commissioner of Labor's Rule 59 does not have the intent or effect of protecting women from hazard. She also contends that the rule is arbitrary in violation of the equal protection clause of the Fourteenth Amendment and that it is contrary to Title VII and thus in violation of the supremacy clause, article 6, clause 2 of the Constitution. In this regard, it may be noted that a United States District Court has recently held that provisions of the California Labor Code restricting lifting by women to weights of 25 pounds and under is a restriction set at an unreasonably low level within the meaning of the Commission's guidelines and that even if 25 pounds did not constitute an unreasonably low level within the meaning of those guidelines, such restrictions are still contrary to Title VII of the Civil Rights Act and must yield. Rosenfeld v. Southern Pacific Co., 293 F.Supp. 1219 (C.D.Cal. Nov. 22, 1968). In that case the Commission appeared as amicus curiae and urged the result reached by the District Court on the basis that there was an irreconcilable conflict between federal and state law which required invalidation of the state law under the supremacy clause.

We need not decide the reasonableness or the constitutionality of Rule 59, however, because effective August 27, 1968, Georgia repealed Rule 59. In its place, the Georgia Commissioner of Labor has promulgated a rule which reads:

"Manual loads limited. Weights of loads which are lifted or carried manually shall be limited so as to avoid strains or undue fatigue."

The decision to repeal the specific weight limit seems to have been at least partially motivated by, and is in conformity with, the recommendations of the Task Force on Labor Standards of the Citizens' Advisory Council on the Status of Women. The President's Commission pointed out:

"Restrictions that set fixed maximum limits upon weights women are allowed to lift do not take account of individual differences, are sometimes unrealistic, and always rigid. They should be replaced by flexible regulations applicable to both men and women and set by appropriate regulatory bodies."

Because the new, flexible rule does not in terms necessarily prevent all women from performing the duties of switchman, the issue of protective state legislation disappears from the case. We are left with the question whether Southern Bell, as a private employer, has satisfied its burden of proving that the particular requirements of the job of switchman justify excluding women from consideration.

In ruling for Southern Bell, the District Court relied primarily on the effect of Rule 59. It did, however, make some additional findings of fact which South-

ern Bell contends are sufficient to satisfy its burden:

> "At the trial of the case, the evidence established that a switchman is required to routinely and regularly lift items of equipment weighing in excess of thirty (30) pounds. * * Additionally, the evidence established that there is other strenuous activity involved in this job. * * *

> "The evidence established that a switchman is subject to call out 24 hours a day and is, in fact, called out at all hours and is sometimes required to work alone during late night hours, including the period from midnight to 6 a. m. In the event of an emergency or equipment failure, the switchman would be required to lift items of equipment weighing well in excess of thirty (30) pounds."

Southern Bell puts principal reliance on the fact that the District Court found the job to be "strenuous." That finding is extremely vague. We note, moreover, that Southern Bell introduced no evidence that the duties of a switchman were so strenuous that all, or substantially all, women would be unable to perform them. Nor did the District Court make a finding on this more concrete and meaningful statement of the issue. The Commission in its investigation, on the other hand, rejected Southern Bell's contention "that the switchman job at this location requires weight lifting or strenuous exertion which could not be performed by females." In addition, Mrs. Weeks produced testimony to the effect that she was capable of performing the job, that a woman in New York had been hired as a switchman and that seven others were performing the job of frameman, the duties of which were essentially indistinguishable from those of a switchman.

■ In examining the record carefully to interpret the finding that the duties of a switchman were "strenuous," we have observed that although Southern Bell attempted to connect a switchman's duties with various pieces of heavy equipment, only a 31-pound item called a "relay timing test set" was used "regularly and routinely" by a switchman. The testimony at trial and the Commission's investigation reveal that in actually using the set the normally accepted practice is to place the test set on the floor or on a rolling step-ladder and that very little lifting of it was required. Thus, while there would be a basis for finding that a switchman's job would require lifting technically in excess of a 30-pound weight limitation, the infrequency of the required lifting would permit quibbling over just how "strenuous" the job is. But we do not believe courts need engage in this sort of quibbling. Labeling a job "strenuous" simply does not meet the burden of proving that the job is within the bona fide occupational qualification exception.

Southern Bell also may be taken as contending that it has simply applied its own 30-pound weight limitation and that a reasonable privately-imposed weight limitation fits within the exception. In this contention, Southern Bell relies heavily on the broad construction of the exception adopted in Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332 (S.D. Ind.1967). In holding a privately-imposed 35-pound weight limitation within the exception, Judge Steckler stated:

> "Generally recognized physical capabilities and physical limitations of the sexes may be made the basis for occupational qualification in generic terms." 272 F.Supp. at 365.

As indicated above, the Commission appeared in Rosenfeld v. Southern Pacific Co., *supra*, to urge that the California weight limitation legislation be struck down. In so doing, the Commission successfully contended that this broad construction of the bona fide occupational qualification exception should not be followed. The Commission's amicus brief there stated that it has consistently interpreted its regulations as being incompatible with the idea that privately-imposed weight limitations for

women are within the bona fide occupational qualification exception. It has taken that position on a case involving a 35-pound weight limit. . The Commission relied upon its guidelines found in 29 C. F.R. Sec. 1601.1(a):

"(1) The Commission will find that the following situations do not warrant the application of the bona fide occupational qualification exception: (i) the refusal to hire a woman because of her sex, based on assumptions of the comparative employment characteristics of women in general. * * * (ii) the refusal to hire an individual based on stereotyped characterizations of the sexes. * * *.

The principle of nondiscrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group."

[7] These guidelines are, of course, entitled to considerable weight. As the Supreme Court said in Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965):

"When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. * * * Particularly is this respect due when the administrative practice at stake involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new."

See also United States v. Jefferson County Board of Education, 372 F.2d 836, 847 (5th Cir.1966), cert. denied sub nom, Caddo Parish School Board v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103.

We agree with the Commission that the broad construction of the bona fide occupational qualification in Bowe v. Colgate-Palmolive Co., supra, is inconsistent with the purpose of the Act—providing a foundation in law for the principle of nondiscrimination.[5] Construed that broadly, the exception will swallow the rule. We conclude that the principle of nondiscrimination requires that we hold that in order to rely on the bona fide occupational qualification exception an employer has the burden of proving that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved.

Southern Bell has clearly not met that burden here. They introduced no evidence concerning the lifting abilities of women. Rather, they would have us "assume," on the basis of a "stereotyped characterization" that few or no

---

5. Our disagreement with that broad construction does not necessarily imply that we disagree with the result reached there. It should be noted that the Court there made specific findings that:

"It was not and is not practical or pragmatically possible for Colgate, in the operation of its plant, to assess the physical abilities and capabilities of each female who might seek a particular job, as a unique individual with a strength and a stamina below average or above average * * *." Bowe v. Colgate-Palmolive Co., supra, at 357.

This finding was based on the "highly refined, bizarre, and extraordinarily complex system of seniority and job assignment in effect at the plant." Id. at 356. It may be that where an employer sustains its burden in demonstrating that it is impossible or highly impractical to deal with women on an individualized basis, it may apply a reasonable general rule. No such showing was made here; it seems plain that it could not be.

women can safely lift 30 pounds, while all men are treated as if they can. While one might accept, *arguendo,* that men are stronger on the average than women, it is not clear that any conclusions about relative lifting ability would follow. This is because it can be argued tenably that technique is as important as strength in determining lifting ability. Technique is hardly a function of sex. What does seem clear is that using these class stereotypes denies desirable positions to a great many women perfectly capable of performing the duties involved.

Southern Bell's remaining contentions do not seem to be advanced with great seriousness. The emergency work which a switchman allegedly must perform consists primarily in the handling of a 34-pound extinguisher in the event of fire. A speculative emergency like that could be used as a smoke screen by any employer bent on discriminating against women. It does seem that switchmen are occasionally subject to late hour call-outs. Of course, the record also reveals that other women employees are subject to call after midnight in emergencies. Moreover, Title VII rejects just this type of romantic paternalism as unduly Victorian and instead vests individual women with the power to decide whether or not to take on unromantic tasks. Men have always had the right to determine whether the incremental increase in remuneration for strenuous, dangerous, obnoxious, boring or unromantic tasks is worth the candle. The promise of Title VII is that women are now to be on equal footing. We cannot conclude that by including the bona fide occupational qualification exception Congress intended to renege on that promise.

Having concluded that Southern Bell has not satisfied its burden of proving that the job of switchman is within the bona fide occupational qualification exception, we must reverse the District Court on this issue and hold that Southern Bell has violated 42 U.S.C. Sec. 2000e–2(a). This case is remanded to the District Court for determination of appropriate relief under the provisions of 42 U.S.C. Sec. 2000e–5(g).

Affirmed in part; reversed and remanded in part.