**Claudine B. CHEATWOOD, Plaintiff,**

v.

**SOUTH CENTRAL BELL TELEPHONE AND TELEGRAPH COMPANY,**
**Defendant.**

**Civ. A. No. 2796–N.**

United States District Court
M. D. Alabama, N. D.

Feb. 12, 1969.

Order and Judgment July 31, 1969.

J. R. Goldthwaite and Patrick M. Scanlon, of Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., for plaintiff.

Walter R. Byars, of Steiner, Crum & Baker, Montgomery, Ala., and Atley Kitchings, Jr., Birmingham, Ala., of South Central Bell Tel. & Tel. Co., for defendant.

FRANK M. JOHNSON, Jr., Chief Judge.

### On Motion to Strike Demand for Jury

This cause is now submitted on plaintiff's motion to strike defendant's timely filed demand for a jury trial.

In determining the issues thus raised, this Court must turn first to the complaint to determine the relief requested. The prayer is as follows:

"1. For monetary damages in the sum of $12,000 to make her whole for the discrimination in employment which she has suffered;

"2. For Court order directing defendant to assign plaintiff to employment as Commercial Representative;

"3. For an injunction against the defendant's further discriminating against female employees by refusing to consider their applications for vacancies in the job classifications of Commercial Representative and other similar classifications;

"4. For the assessment of a reasonable attorney's fee to be awarded to plaintiff for payment for the services rendered by her attorney in connection with this action."

South Central Bell argues that the Seventh Amendment, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), require a jury trial on the issue of plaintiff's prayer for back pay. There is no doubt that the other remedies sought are equitable; the only question now presented by this motion is whether the claim for back pay raises a legal issue.

Certainly the statutory language seems to treat the back pay issue as one for the trial judge rather than a jury. 42 U.S.C. § 2000e–5(g) provides:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, *the court* may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the

employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice)." (Emphasis added.) This was the interpretation given the language in a rather similar context. Swofford v. B & W, Inc., 336 F.2d 406, 411–412 (5th Cir. 1964).

The only authority squarely on point denied a jury trial in, a Title VII back pay case. See Hayes v. Seaboard Coast Line R. R. Co., 46 F.R.D. 49, S.D.Ga., Dec. 9, 1968, and cases there cited. The Supreme Court has held that there is no right to a jury trial on an award of back pay under § 10(c) of the National Labor Relations Act. NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48–49, 57 S.Ct. 615, 629, 81 L.Ed. 893 (1937). The Court there stated:

> "The instant case is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law. It is a statutory proceeding. Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement. The contention under the Seventh Amendment is without merit."

■ Defendant relies heavily on Harkless v. Sweeny Independent School District, 278 F.Supp. 632 (S.D.Tex. 1968), in which the Court granted a jury trial on the issue of back pay in an action under 42 U.S.C. § 1983 seeking reinstatement as teachers after a discharge allegedly based on racial discrimination. Section 1983, unlike Title VII, speaks directly on an "action at law." To the extent that *Harkless* is inconsistent with *Hayes,* however, this Court chooses to follow *Hayes. Harkless* seems to depend on what this Court views as the mistaken proposition that Dairy Queen v. Wood, supra, overruled *sub silentio* NLRB v. Jones & Laughlin Steel Corp., supra. As indicated above, the latter case did not rely on the characterization of a back pay award "as merely incidental to the equitable remedy," condemned in *Dairy Queen,* but rather held that the back pay award was not in the nature of a suit at common law.

Accordingly, it is ordered that plaintiff's motion to strike defendant's demand for a jury trial be and the same is hereby granted.

## ORDER AND JUDGMENT

In this action Mrs. Claudine B. Cheatwood charges her employer, South Central Bell Telephone & Telegraph Company, with discrimination on the basis of sex in filling a vacancy for the job classification of commercial representative in Montgomery, Alabama, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

It is admitted that the plaintiff and two other female employees submitted timely bids for the vacancy, that Employer declined to consider the bids of the female employees without considering their individual qualifications, and that the job was awarded to the only male applicant.

It is also undisputed that on or about May 12, 1967, within 90 days following Employer's failure to consider her application, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. The charge was amended on or about July 20, 1967, and was served upon the Southern Bell Telephone & Telegraph Company (Employer's corporate predecessor) on or about July 24, 1967. On July 26, 1968, the Commission issued its decision finding that reasonable cause existed to believe that Employer had committed an unlawful employment practice in violation of Title VII. On October 29, 1968, the Commission issued a letter to plaintiff advising that its efforts to conciliate plaintiff's charge of discrimination had failed to achieve voluntary compliance and notifying her that she could institute a civil action within 30 days.

Employer has, in effect, admitted a prima facie violation of § 703(a) of the Civil Rights Act of 1964, 42 U.S.C. §

2000e–2(a) which provides in pertinent part:

"Employer Practices

(a) It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex * * *; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's * * * sex * * *".

Employer has consistently contended, however, that the position of commercial representative fits within the exception to the general prohibition of discrimination against women set forth in § 703(e) (1), 42 U.S.C. § 2000e–2(e) (1) which provides in pertinent part:

"(e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, * * * on the basis of his * * * sex, * * * in those certain instances where * * * sex, * * * is a *bona fide occupational qualification* reasonably necessary to the normal operation of that particular business or enterprise, * * *" (Emphasis added.)

In a recent case quite similar to the one *sub judice*, the Court of Appeals for the Fifth Circuit made clear that the burden of proof is on the employer to demonstrate that a given position fits within the bona fide occupational qualification exception. Weeks v. Southern Bell Telephone & Telegraph Co., 408 F. 2d 228 (5th Cir. 1969). The court in *Weeks* went on to explain the extent of the showing required to satisfy that burden:

"In order to rely on the bona fide occupational qualification exception, an employer has the burden of proving that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved."

The only issues in this case, then, are determining the duties of a commercial representative and determining whether or not all or substantially all women would be unable to perform those duties safely and efficiently.

The official job description in effect at the time this dispute arose provides:

"COMMERCIAL REPRESENTATIVE—(9/49) Handles commercial matters primarily outside the Company's office, such as visits to customers' premises in connection with criticisms, facilities, securing signed applications where required, credit information, deposits, advance payments, coin telephone inspections, and visits in connection with live and final account treatment work. May also be assigned to work inside the office pertaining to service and collections."

The testimony at trial produced more specific descriptions of these duties and revealed certain additional duties that go with the job in Montgomery, Alabama:

1. Rural canvassing for new customers and mileage checks for billing purposes.

2. Relief of the coin telephone collector on an average of about two days per week.

3. Destroying certain of employer's records on a monthly and annual basis.

4. Handling current records of billing stubs and handling supply requisitions in the office.

5. Performing the biennial furniture inventory.

Defendant contends that several features of these duties make them inappropriate for performance by women. With respect to the rural canvassing, it suggests the possibilities that tires will

need to be changed[1] and that restroom facilities are occasionally inaccessible. These contentions can be regarded as little more than makeweights. There is no proof that all or nearly all women would be unable to cope with these difficulties. They do, of course, render the position somewhat unromantic. But as was said in *Weeks,* Title VII "vests individual women with the power to decide whether or not to take on unromantic tasks."

Employer also contends that the duties of commercial representative would subject a female employee to harassment and danger. This is based partly on problems arising from the collection of over due bills and partly on the fact that when acting as a substitute coin collector, the employee must make collections in bars, poolrooms, and other such locations. Again, however, there is nothing in the record to indicate that these features of the position are functionally related to sex. They mean nothing more than that some women, and some men, might not wish to perform such tasks. Here, however, the record is clear that one obtains this position by bidding for it and that if one is dissatisfied it is possible to request a transfer or a return to the former position.

Employer has consistently placed principal reliance on the fact that certain aspects of the job as performed in Montgomery require lifting of weights. Although other aspects of the job require occasional lifting, the alleged strenuousness of the position relates primarily to the work involved in relieving the coin collector. The evidence reflects that other commercial representatives in Montgomery have spent an average of two days per week on this relief work. In a normal day of this work a commercial representative would collect approximately 45 coin boxes from pay stations on his route. As they are collected, these coin boxes are placed in a small metal case which is compact and relatively easy to handle. Each case will hold up to nine coin boxes. A case weighs approximately 6 pounds empty, and the estimates of its weight when full varied from 45 to 80 pounds. An actual random sample indicated that the average on a particular day in Montgomery was 60¾ pounds. Occasionally, a case will weigh over 90 pounds. In a given day, from five to nine cases must be handled, and each case must be lifted and/or carried full in, out or around the collection truck four times a day.

In an effort to generate the desired inferences from these facts, the parties engaged in a battle of experts. Defendant produced Dr. Wood Herren, a doctor who, subsequent to the complained-of events, was appointed defendant's medical director.[2] Dr. Herren is an internal medicine specialist which, according to his testimony, is a modern-day general practitioner. He did not purport to be an expert on either industrial medicine or the care and treatment of women, and his observations were based largely on his experience in 16 years of private practice. Plaintiff produced Dr. Nace R. Cohen, an obstetrician and gynecologist for more than 20 years.

These medical experts agreed, and, through their testimony, enlightened this Court to the effect that there were certain genetic and musculo-skeletal differences between the sexes: Males tend to have a heavier muscular and ligamentous structure; males tend to have a higher aerobic metabolism rate; females tend to have greater lordosis, or curvature of the spine; females only are susceptible to osteoporosis, a softening of the bones from hormonal changes asso-

[1]. A former commercial representative testified that he had to change tires on the job 11 times in 13 years.

[2]. It was thus not upon his advice that the male sex was made an occupational qualification for the position of commercial representative.

ciated with menopause; and females only are subject to pregnancy.

The doctors did not agree, however, on all the effects of these differences. Both doctors agreed that the differences in muscular and ligamentous structure and in aerobic metabolism meant that men can perform greater amounts of work than women, i. e., men can lift more, more often, for longer periods of time than women. Dr. Herren testified that the lordosis makes the low back of the female more prone to stress and strain from lifting; Dr. Cohen testified that he knew of no such tendency and suggested that the greater curvature makes it easier for women to bend forward and pick up objects.[3] Dr. Herren seemed to feel that osteoporosis would be quite significant in preventing women from safely performing this job; Dr. Cohen, with considerable experience on this particular subject, testified that only about 5 percent of the female population has a significant degree of osteoporosis prior to age 65. The doctors agreed that in most cases osteoporosis can be modified or avoided altogether with hormonal treatment. The doctors also agreed that little lifting should be done during pregnancy. Finally, Dr. Cohen testified that in his opinion between 25 and 50 percent of the female population could perform the coin collector relief work; Dr. Herren, while not asked by Employer whether all or substantially all women could perform the job, admitted on cross examination that some women, depending upon the individual, could perform the lifting without hazards.

■ A thorough consideration of the evidence makes clear that it is "rational," rather than merely capricious, for the employer to discriminate against women as a class in filling this position, i. e., on the average, men can perform these tasks somewhat more efficiently and perhaps somewhat more safely than women. Employer relies upon a statement in Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332, 365 (S.D.Ind.1967), for the proposition that such a showing is sufficient to rely upon the bona fide occupational qualification exception:

> "Generally recognized physical capabilities and physical limitations of the sexes may be made the basis for occupational qualifications in generic terms."

As indicated above, however, Employer faces a more substantial burden. The language quoted from *Bowe* was specifically rejected in *Weeks* for the Fifth Circuit and the Commission is urging on appeal that it be rejected by the Seventh Circuit—in both instances for the very good reason that if it were followed the bona fide occupational exception would swallow the rule against discrimination.

*Weeks* requires Employer to show that all or substantially all women would be unable to perform safely and efficiently the duties of the position involved. While it may be that, in terms of lifting weights, the duties of this position begin to approach the outer limits of what women should undertake, this Court firmly concludes that Employer has not satisfied its burden of proof. Dr. Cohen's testimony that 25 to 50 percent of the female sex could perform the job, while not standing alone, is accepted by this Court and fully rebuts Employer's contention. Nor is the fact that pregnant women should not perform the job of crucial importance. Employer can have a rule against pregnant women being considered for this position, but Title VII surely means that all women cannot

3. Here, and in other instances where the testimony of the doctors conflict, this Court finds that the experience of Dr. Cohen is more specifically related to the problem at hand, that his testimony tends to be more detailed and relevant, and that his conclusions are more persuasive.

be excluded from consideration because some of them may become pregnant.

It is not inappropriate to observe in conclusion that it appears to this Court that it will not impose a hardship on this Employer to determine on an individual basis whether a person is qualified for the position of commercial representative. On the other hand, it is manifest that the use of this class distinction deprives some women of what they regard as a lucrative and otherwise desirable position.

Accordingly, this Court now specifically finds and concludes that the male sex is not a bona fide occupational qualification for the position of commercial representative in Montgomery, Alabama.

It is therefore ORDERED, ADJUDGED and DECREED that defendant South Central Bell Telephone & Telegraph Company, its agents, officers, employees, successors, and all those in active concert or participation with it, be and each is hereby enjoined from failing and refusing to make, within 30 days from the date of this order, a new determination of entitlement to the position of commercial representative in Montgomery, Alabama, previously awarded to William E. Noble, in which plaintiff and all other employees bidding on the job shall be considered on the basis of their individual qualifications and without regard to their sex.

It is further ordered that counsel for plaintiff, Mr. J. R. Goldthwaite, Jr., be awarded a reasonable attorney's fee, in an amount to be agreed upon by the parties or to be determined by this Court upon the basis of written evidence submitted within 15 days from the date of this order.

It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against defendant South Central Bell Telephone & Telegraph Company.