450 F.2d 557
 3 Fair Empl.Prac.Cas. 1222, 4 Empl. Prac.
Dec. P 7556
Linell LONG et al., Plaintiffs-Appellants,
v.
GEORGIA KRAFT COMPANY, Defendant-Appellee.
Linell LONG et al., Plaintiffs-Appellants,
v.
INTERNATIONAL BROTHERHOOD OF PULP, SULPHITE AND PAPERMILL
WORKERS, AFL-CIO, et al., Defendants-Appellees.
 No. 30453.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 12, 1971.
 
 Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., Jack Greenberg, James M. Nabrit, III, Norman Amaker, William L. Robinson, New York City, for plaintiffs-appellants.
 J. R. Goldthwaite, Jr., Atlanta, Ga., for Union.
 Oscar M. Smith, Rome, Ga., Smith & Schnacke, Dean Delinger, Dayton, Ohio, for Ga. Kraft.
 Bobby Lee Cook, A. Cecil Palmour, Summerville, Ga., for Local 654.
 George Anderson, Rome, Ga., for Local 804.
 Benjamin Wyle, New York City, for Int. Bro. of Pulp, Sulphite etc.
 Warren Woods, Washington, D. C., for United Papermakers, etc.
 Russell Specter, Deputy Gen. Counsel, Geo. H. Darden, Atty., E. E. O. C., Washington, D. C., amicus curiae.
 Before RIVES, GOLDBERG and MORGAN, Circuit Judges.
 RIVES, Circuit Judge:
 
 
 1
 Plaintiffs, three Negro employees at Georgia Kraft Company's Krannert Division in Rome, Georgia, filed this class action based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., against Georgia Kraft and the defendant unions. The case was tried to the court on the issues: (1) whether a system which incorporates job seniority rather than mill seniority in promoting and laying off employees is discriminatory under Title VII; and (2) if so, what is the appropriate remedy for such discrimination? The district court after a full trial, including a view of the plant in operation, entered detailed findings of fact and an able and extensive opinion. See Long v. Georgia Kraft, et al., 328 F.Supp. 681 at pp. 687, 688.
 
 
 2
 The district court decided the first issue for the plaintiffs, concluding:
 
 
 3
 "(5) The employment policies and practices of Georgia Kraft Company prior to May 15, 1963, described above, constitute racial discrimination against Negro employees at the Krannert Division. If practiced after the effective date of the Civil Rights Act of 1964, 42 U.S.C.A. Sec. 2000e et seq., such discrimination would be an unlawful employment practice under the Act. 42 U.S.C.A. Sec. 2000e-2(a).
 
 
 4
 "Because of the situation engendered by such racial discrimination, a seniority system incorporating 'job security' as a substantial factor in promoting and laying off employees at the Krannert Division of Georgia Kraft Company has the present effect of unlawfully discriminating against Negro employees at the Mill, whenever members of the affected class compete against white employees for promotions or during layoffs, in that:
 
 
 5
 "(A) under such a system, some Negro employees previously discriminated against would be unsuccessful in bidding against white employees with less mill seniority for available job vacancies higher in the lines of progression, solely because the junior white employees, on the basis of their race and color, had obtained greater seniority on jobs in lines of progression previously closed to Negroes;
 
 
 6
 "(B) additionally under such a system, some qualified Negro employees who have greater mill seniority, would remain perpetually beneath less senior white employees in terms of pay and place in the lines of progression, because the opportunity of obtaining seniority on jobs in such lines of progression had previously been denied Negro employees solely on the basis of race.
 
 
 7
 "Such a seniority system is a 'term, condition and privilege of employment' that discriminates against Negro employees on the basis of race in violation of Section 703(a) of the Civil Rights Act of 1964. Local 189, United Papermakers and Paperworkers [A. F. L.-C. I. O., C. L. C.] v. United States, 416 F.2d 980 (5th Cir. 1969), aff'g [United States by Clark v. Local 189] 282 F.Supp. 39 (E.D.La.1968); see also 301 F.Supp. 906 (E.D.La.1969)."
 
 
 8
 328 F.Supp. at 687.
 
 
 9
 As to the second issue, the appropriate remedy, the district court said in part:
 
 
 10
 "* * * [I]t is plain that competition on the basis of mill seniority must supplant a job seniority system from which members of the 'affected class' have been locked out in the past. The court will so order.
 
 
 11
 "Over and beyond such relief, the plaintiffs insist and the EEOC has recommended that other remedial steps be taken by the court to equate instantly the starting point for the new promotion system by the device of 'advanced level entry' and 'job skipping' within the established lines of progression. While the court is impressed by the arguments and evidence in this respect, it is most reluctant to initiate any such action. Most judges lack the industrial expertise to restructure a going business in this fashion. Here, an investment of close to $100,000,000 and the jobs of some 800 unionized workers lie in the balance. The complexity of the testimony in this case, even when aided by a trial by view of the mill operation, emphasizes the problem. While it is true that the task can technically be accomplished by a judge's reaction to expert testimony, it resolves itself into yet another area of a court functioning in the role of a supervisory administrator for which few, if any, are qualified. On principle and as precedent, then, the court does not feel that such remedies are anticipated by the act nor are they a wise course for the courts to pursue. Our law has a strong policy in favor of the resolution of such questions through the collective bargaining processes. 29 U.S.C.A. Sec. 141; 29 U.S.C.A. Sec. 158(d). That favored system has been in operation at this mill since its construction over 15 years ago. In the area of job classification, lines of progression, and the orderly functioning of labor-management relations, the courts are particularly admonished to abstain. 29 U.S.C.A. Sec. 185; N. L. R. B. v. Insurance Agents' Int'l. Union, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960). The court is aware of the results in 'Local 189 # 2' at 301 F.Supp. 906 (E.D.La.1969). However, as yet there is no definitive authority requiring such a course of action. The enormity of the problem in terms of General Motors, Lockheed, and other large employers is overwhelming. Thus, while the court is sympathetic with these particular plaintiffs in their efforts to 'catch up' in the system, it declines to institute such drastic procedures except where there has been consent by the parties."
 
 
 12
 328 F.Supp. at 688.
 
 
 13
 The district court retained jurisdiction, saying:
 
 
 14
 "The Court will retain jurisdiction of this cause for a period of two years. During such time, any party may by motion request modification of this Order in light of new factual or legal developments."
 
 
 15
 328 F.Supp. at 690.
 
 
 16
 It appeared that the collective bargaining agreement in force at the time of the district court's decision would expire on August 28, 1971. Consequently, under date of August 5, 1971, the Clerk of this Court requested counsel for the various parties to file by stipulation on or before September 10, 1971 a copy of any collective bargaining agreement which became effective on or after August 28, 1971. In response dated September 10, 1971, this Court was advised:
 
 
 17
 "(a) that no new contract has yet been signed; and,
 
 
 18
 "(b) that those who are participating in the contract negotiations do not know when agreement will be reached.
 
 
 19
 "Should a new contract be reached prior to the Court's determination of this matter, I am certain that we can inform the Court as to its details."
 
 
 20
 Apparently agreement has not yet been reached on a new collective bargaining contract.
 
 
 21
 On this appeal there is no contest as to the first issue. The law relating to that issue has been fully and ably explored in the cases relied on by the district judge. Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980 (5th Cir. 1969), aff'g 282 F.Supp. 39 (E.D.La.1968); see also 301 F.Supp. 906 (E.D.La.1969). In the second Local 189 case, supra, Judge Heebe had discussed the principles upon which the issues of advance level entry and job skipping should be decided and had given mill seniority practical application:
 
 
 22
 "4. Title VII of the Civil Rights Act of 1964 requires that opportunities to hold better paying jobs be made available to all employees equally without regard to race. So long as there are institutional systems or procedures which deny to Negroes advancement to better paying, more desirable jobs which are held by whites with comparable mill seniority and ability, this legal obligation is not satisfied. The company is not required to forego its legitimate interest in maintaining the skill and efficiency of its labor force. Consistent with these two safeguards, however, removal of any structural impediments which delay the attainment by Negroes of jobs generally as good as those held by their white contemporaries or which force Negroes to pay a price for those opportunities are required by law to be removed.
 
 
 23
 "5. For positions which provide training and experience which are necessary for the performance of higher jobs in the line of progression, the company may lawfully invoke a reasonable residency requirement-i. e., a period of time which must be served before an employee is eligible to bid for higher jobs in the line of progression. However, as the stipulation of the parties demonstrates, many of the jobs in the mill do not provide any such training and experience, while in others the necessary training and experience can be obtained in less than six months. Accordingly, the residency requirement should not be a fixed period, such as six months for each job in the mill, but should be fixed at the minimum time required to provide necessary training and experience for each job, as stipulated to by the parties. Any longer period would unnecessarily retard the advancement of those in the class discriminated against and would be unlawful.
 
 
 24
 "6. Negroes in the class discriminated against are entitled to compete for jobs on the basis of their competence and mill seniority, and thus may skip such jobs in the lines of progression which do not provide training and experience necessary to the performance of the job for which they are competing.
 
 
 25
 "7. For the same reasons, Negroes in the class discriminated against are entitled to compete for jobs in lines of progression on the basis of their competence and mill seniority above the entry level in those lines where the present entry level job does not provide training and experience which are necessary to the performance of higher positions in the lines of progression.
 
 
 26
 "8. Negroes in the class discriminated against may obtain the training and experience necessary to the performance of higher jobs in the line of progression, by virtue of their temporary assignments, which are common in the mill, at least where such assignments amount to 64 or more hours per month. Accordingly, qualified Negroes in the affected class who have served in a position in such increments for sufficient time to acquire the training and experience necessary for performance of higher jobs in the line of progression are entitled to bid for those jobs on the basis of their mill seniority, notwithstanding they may never have held such a position on a permanent basis."
 
 301 F.Supp. 917-918.[1]
 
 27
 It was the duty of the district court, so far as possible, to eliminate the present effects of past discrimination.[2] The discriminatory job seniority system should be relaxed to the extent not forbidden by considerations of safety and efficiency, the component parts of business necessity. Local 189, supra, 416 F.2d at 993. That extent will, of course, vary from case to case. As the EEOC says in its amicus curiae brief, "The crux of the problem here and in similar cases cited is how far is 'far as possible'?"
 
 
 28
 Under the most recent collective bargaining agreement there are eleven lines of progression in force, that is, series of jobs in which an employee progresses by promotion to successively higher paying jobs. The district court found that the jobs in a line of progression are sometimes, but not always, arranged in such a way that experience in a lower job is necessary for performance in the next higher job. (App. 257a, 258a).
 
 
 29
 The Georgia Kraft Company and the two International Unions, after some four days of meetings and discussions under the auspices of the Equal Employment Opportunity Commission, agreed on a tentative settlement which contained eight specified instances in which advance level entry and job skipping should be instituted as to members of the class previously discriminated against. The first two instances which concern the formerly all black lines of progression were consented to by all three defendant local unions. The two defendant white local unions would not consent in the other six instances. By stipulation in the district court (App. 184a) and by their brief in this Court (Appellants' brief, p. 8), the plaintiffs-appellants confine their insistence on advance level entry and job skipping to the six instances contained in the EEOC's tentative conciliation agreement. In the district court the Company's position was thus expressed:
 
 
 30
 "GEORGIA KRAFT COMPANY believes that the provisions of the tentative agreement, if adopted by the Court as its final decree, would be a fair, proper and lawful disposition of the two pending cases."
 
 
 31
 (App. 46a-47a). In brief on this appeal, the Company states:
 
 
 32
 "This remains the position of the Company, and for that reason it does not oppose the appeal. The Company would oppose any additional relief, and such additional relief would in fact be precluded by the restriction of the issues litigated in the hearing before the District Court. See the stipulation contained on pages 182a through 184a of appellants' appendix."
 
 
 33
 Confining the issues to those six instances should alleviate the enormity and complexity of the problem which the district court viewed with such apprehension. We share the district court's preference that the parties who are most familiar with the problem should reach an understanding either under the auspices of EEOC as was attempted or through ordinary collective bargaining processes. However, failure or refusal of some of the parties to reach such an understanding cannot operate to relieve the district court of its duty under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., to eradicate the past effects of discrimination to the extent not forbidden by considerations of safety and efficiency. We agree with the plaintiffs that the defendants have the burden of showing that business necessity justifies any continuing effects of past discrimination.[3] From the record before us, we doubt very much whether the defendants have met that burden. The district court made no specific findings of fact or conclusions of law as to whether the remedies of advance level entry and job skipping in the instances contained in the tentative conciliation agreement were forbidden by business necessity. We think such findings and conclusions should be made in the light of the evidence already introduced, and also of the district court's view of the operation of the plant, and of any additional evidence which the district court in its discretion may permit. It is not clear that the district court has applied the standards of law which have been expressed in this opinion. The district court is in far better position than is this Court to find to what extent, if any, business necessity forbids the remedies of advance level entry and job skipping in the six pertinent instances. Unless the parties without further delay reach a collective bargaining agreement which renders that issue moot, we think that the district court should hear and decide the issue promptly.
 
 
 34
 Reversed and remanded.
 
 
 
 [1]
 See also Quarles v. Philip Morris, Inc., E.D.Va.1968, 279 F.Supp. 505, and the writings referred to by Judge Wisdom in footnote 2 of Local 189, supra, 416 F.2d 982, 983, particularly the note in 80 Harv.L.Rev. 1260 (1967)
 
 
 [2]
 Local 53, of International Ass'n of Heat and Frost Insulators and Asbestos Workers v. Vogler, 5th Cir. 1969, 407 F.2d 1047, 1052, 1053. Accord: Louisiana v. United States, 1965, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709
 
 
 [3]
 Weeks v. Southern Bell Tel. & Tel. Co., 5th Cir. 1969, 408 F.2d 228; United States v. Richberg, 5th Cir. 1968, 398 F.2d 523; Jones v. Lee Way Motor Freight, Inc., 10th Cir. 1970, 431 F.2d 245; North Carolina Teachers Ass'n v. Asheboro City Bd. of Education, 4th Cir. 1968, 393 F.2d 736