QUESTION:
Are minimum height and weight requirements which are set by the Florida Highway Patrol and the Firefighters Standards Council, and which all job applicants are required to meet, valid under federal law?
SUMMARY:
Minimum height and weight requirements, which have the effect of denying equal employment opportunities to women as well as individuals of certain foreign extractions are probably invalid under applicable federal law.
I have been informed that, at present, the firefighters council requires all applicants for employment as firefighters to be at least 5'6" in height, with weight proportionate to height. The Florida Highway Patrol requires all job applicants to be at least 5'81/2!mfe!x" tall and to weigh 160 pounds. Additionally, the Orlando Civil Service Commission has recently ruled that police officers are required to meet a 5'8" minimum height standard. The firefighters council has discussed changing the council's minimum height requirements, but so far no such action has been taken.
The obvious effect of minimum height and weight requirements, such as the above, is to deny equal employment opportunities to women as well as individuals of some foreign extractions who, as a statistical class, tend to be shorter and to weigh less than native-born American men when such individuals are, in all other respects, eligible for employment. Due to recent federal decisions and legislation prohibiting states from denying to women and non-native-born Americans, as well as aliens lawfully residing within the country, equal employment opportunities, I am of the opinion that across-the-board height and weight requirements, if challenged in a federal district court in Florida, would probably be ruled invalid under the Equal Protection Clause of the United States Constitution, U.S. Const. amend. XIV, s. 1; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., as amended in 1972. Such requirements could be sustained only where the affected department could affirmatively demonstrate that minimum height and weight requirements are essential to the performance of the duties of a specific position.
In Smith v. City of East Cleveland, 363 F. Supp. 1131 (N.D.Ohio. 1973), a civil rights action was brought by a group of women who alleged that they were denied the opportunity to apply for employment as East Cleveland police officers because they did not meet the 5'8" height requirement and the 150-pound weight requirement imposed by the police department. In granting the plaintiffs the declaratory and injunctive relief requested against enforcement of the height and weight requirements, the court observed that:
"The height and accompanying weight requirements were maintained and enforced by defendants as a part of a process to hire only males as police officers and with the effect and intent to exclude nearly all women applicants. The Court is unable to find rational support for the height and weight requirements and concludes thatthe requirements are based solely on the stereotype of the largemale police officer. Smith v. City of Cleveland, supra, at 1144." (Emphasis supplied.)
Thus far, three federal circuits have ruled that under the Civil Rights Acts of 1866 and 1871, 42 U.S.C. ss. 1981 and 1983, respectively, a requirement producing a largely disparate effect on a given group would be constitutionally impermissible if the requirement were not rationally related to job performance. See Smith v. City of East Cleveland at 1137 and cases cited therein. In order to decide whether height and weight restrictions were rationally related to job performance, the federal district judge who presided over the Smith case received fifteen days of evidence, including testimony and depositions from seven expert witnesses on the height and weight requirements alone. All of the justifications presented by the department in order to sustain the height and weight requirements were thoroughly examined by the court and subsequently rejected as having no basis in fact, having questionable evidentiary value, or being erroneous.
Moreover, the 1972 amendment to Title VII of the Civil Rights Act of 1964 (hereafter referred to as "the act") deleted the exemption formerly afforded to states and their political subdivisions as "employers" within the act and, thereby, subjects the states and their political subdivisions to the same equal employment standards once imposed solely upon "private employers." See 42 U.S.C. § 2000(e) (Supp. 1973); Bridgeport Guard, Inc. v. Members of Bridgeport Civil Service Com'n., 482 F.2d 1333, 1334 at n. 1 (2nd Cir. 1973). See also O'Brien v. Shimp, 356 F. Supp. 1259
(N.D.Ill. 1973). One of the main purposes of the act is to provide equal access to the job market for both men and women, Diaz v. Pan Am World Airways, 442 F.2d 385, 386 (5th Cir. 1971), and, therefore, to provide a foundation in the law for the principle of nondiscrimination. Weeks v. Southern Bell Telephone and Telegraph Co., 408 F.2d 228, 235 (5th Cir. 1969).
When employers have instituted qualifications for employment which have an exclusionary effect upon certain classes of applicants, such requirements must be shown to bear a demonstrable relationship to successful performance of the jobs for which they are used. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802
(1973). The act proscribes not only overt discrimination but also practices that appear nondiscriminatory in form, but are, in fact, discriminatory in practice. Griggs v. Duke Power Co., 401 U.S. 424
(1971).
To achieve the purposes of the act, the Equal Employment Opportunity Commission (hereafter referred to as "E.E.O.C." or "commission"), which is charged with the responsibility of enforcing the act, has promulgated guidelines and interpretive comments which have previously been adopted by the United States Court of Appeals for the Fifth Circuit. Weeks v. Southern Bell Telephone and Telegraph, supra. Employment qualifications which discriminate on the basis of sex or national origin may be sustained only if the qualification falls within a narrowly or strictly construed "bona fide occupational exception" as defined by federal guidelines.
In regard to allegations of sex discrimination, E.E.O.C. guidelines found at 29 C.F.R. s. 1604 et seq. (1973) state that the commission will find that the refusal to hire a woman based on assumptions of the comparative employment characteristics of women in general, e.g., the turnover rate among women is higher than among men, will not warrant the application of the bona fide occupational qualification exception. Additionally, the refusal to hire an individual based on stereotyped characterizations of the sexes will likewise not warrant a finding of a bona fide occupational qualification. Where it is necessary for the purpose of authenticity or genuineness, e.g., an actor or actress, the commission will find a bona fide qualification exception. However, the commission has already ruled that a private employer's 5'6" height requirement for production-type jobs had a disproportionate impact upon women, did not constitute a bona fide occupational qualification and, therefore, violated the act. See E.E.O.C. Decision No. 71-1529 (1971) CCH Employment Practices Guide Paragraph 6231.
In regard to sex-oriented state employment legislation, the commission has issued the following regulation:
"Many States have enacted laws or promulgated administrative regulations with respect to the employment of females. Among these laws are those which prohibit or limit the employment of females, e.g., the employment of females in certain occupations, in jobs requiring the lifting or carrying of weights exceeding certain prescribed limits, during certain hours of the night, for more than a specified number of hours per day or per week, and for certain periods of time before and after childbirth. TheCommission has found that such laws and regulations do not takeinto account the capacities, preferences, and abilities ofindividual females and, therefore, discriminate on the basis ofsex. The Commission has concluded that such laws and regulations conflict with and are superseded by Title VII of the Civil Rights Act of 1964. Accordingly, such laws will not be considered a defense to an otherwise established unlawful employment practice or as a basis for the application of a bona fide occupational qualification exception." (Emphasis supplied.) [29 C.F.R. s. 1604.2, id.]
The commission has likewise promulgated guidelines dealing with discrimination on the basis of national origin which provide, at 29 C.F.R. s. 1606 et seq. (1973), that since the act is intended to apply to covert as well as overt practices of discrimination, the commission will examine with particular concern cases where persons within the jurisdiction of the commission have been denied equal employment opportunities for reasons which are grounded in national origin considerations. For example, since discrimination based upon citizenship is in fact discrimination as to national origin, state laws which expressly prohibit the employment of noncitizens are in conflict with and, therefore, superseded by the act pursuant to 29 C.F.R. ss. 1606.1(d) and (e), id. Likewise, the use of height and weight requirements which in effect deny equal employment opportunities to persons who, as a class, tend to fall outside national norms for height and weight, is also discrimination based on national origin and specifically prohibited at 29 C.F.R. § 106.7(c), id., unless such height and weight restrictions are shown to be necessary for the performance of the work involved.
Additionally, the Iowa Civil Rights Commission has ordered the Des Moines Police Department to suspend height and weight requirements "until such time as they are properly able to validate in a professional manner such requirements for job-relatedness." Nancy L. Moore v. City of Des Moines Police Department, CP No. 881, Iowa Civil Rights Commission (July 11, 1973). The Pennsylvania Attorney General has ordered a 5'6" height requirement for state police suspended because it excluded women and some minority groups. CCH Employment Practices Guide Paragraph 5177 (1973). In Florida, however, the Attorney General has no such authority.
It should also be noted that state agencies or departments which receive federal financial assistance through the Department of Justice, Law Enforcement Assistance Administration (commonly known as L.E.A.A.), may not, consistent with federal regulations, retain height and weight requirements which disproportionately disqualify "women and persons of certain national origins and races" unless the recipient of federal assistance "is able to demonstrate convincingly through the use of supportive factual data such as professionally validated studies that such minimum height requirement is an operational necessity for designated job categories." See Department of Justice, L.E.A.A., Equal Rights Guidelines, 38 Fed. Reg. 6415 (March 6, 1973). See also Department of Justice, Equal Employment Opportunity Guidelines,38 Fed. Reg. 6388 (March 9, 1973) and 38 Fed. Reg. 23516 (August 31, 1973); Department of Justice Guidelines for Enforcement of Title VII of the Civil Rights Act of 1964, 28 C.F.R. Subparts C and D (as to nondiscrimination in federally funded programs) and activities and42 U.S.C. § 3757 (1973) (as to the withholding of payments for noncompliance with L.E.A.A. regulations).
With all of the foregoing in mind, I am compelled to the view that minimum height and weight requirements which have the effect of excluding women and individuals of certain foreign extractions do not constitute "bona fide occupational qualifications" within the meaning of the act, nor can they be shown to be necessary for the performance of all the various types of positions here involved. Even though certain police or firefighter duties may require an individual of larger stature, this is, of course, no justification for employment qualifications which deny to women and some non-native-born Americans equal employment opportunities with regard to every position within the department or agency. Cf. Bruton v. Rockefeller, 42 U.S.L.W. 2186 (N.Y.Sup.Ct. Sept. 9, 1973).