**Thelma AUSTIN et al.,**

v.

**REYNOLDS METALS COMPANY**
and
**Aluminum Workers International Union,
Local No. 400.**

**Civ. A. No. 6022-R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 6, 1970.

Matthew N. Ott, Jr., Richmond, Va., for plaintiffs.

William H. King, Richmond, Va., for defendant, Reynolds Metals Co.

J. J. Levit and Beecher E. Stallard, Richmond, Va., for defendant, Aluminum Workers International Union, Local No. 400.

Marian Halley, Atty., Office of the General Counsel, Equal Employment Opportunity Commission, Washington, D. C., for Equal Employment Opportunity Commission, requesting intervention as amicus curiae.

## MEMORANDUM

ROBERT R. MERHIGE, Judge.

This is an action for damages and to compel compliance with Title VII of the Civil Rights Act of 1964, and in particular those provisions which bar discrimination on the basis of sex by employers, 42 U.S.C. § 2000e–2(a), and by labor unions, 42 U.S.C. § 2000e–2(c). There are

numerous plaintiffs, but the parties have not suggested that the suit take the form of a class action.

Defendants, Reynolds Metals Company, hereinafter Reynolds, and Aluminum Workers International Union, Local No. 400, hereinafter Local 400, have moved to dismiss on four grounds. First it is said that the suit is barred because the Equal Employment Opportunity Commission secured voluntary compliance with the terms of Title VII of the 1964 Civil Rights Act by both Reynolds and the Union. The defendants assert, secondly, that the claims are barred because the action was not brought within thirty days of plaintiffs' receiving the statutory notice of right to sue, as required by 42 U.S.C. § 2000e–5(e). Moreover, they say, any claim arising from the June, 1966, layoff is barred for failure of any plaintiff to file charges with the Commission within ninety days of the accused practice, as specified in 42 U. S.C. § 2000e–5(d). The same ground is asserted as to two plaintiffs with respect to the second layoff of November, 1966. Local 400 seeks dismissal, too, on the ground that any allegations of failure to file grievances are inconsistent with the jurisdictional bases asserted, 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f).

The procedural chronology is obviously of importance.

In evidence is a letter dated October 1, 1968, from Robert L. Randolph, Director of Compliance of the Commission, to John F. Dugan of the Labor Relations Division of defendant Reynolds, Exhibit "A" to affidavit of Thomas E. Starke, submitted in opposition to appointment of counsel. Randolph states therein that "a satisfactory settlement could not be reached with all of the Charging Parties; therefore, in accordance with Section 706 (e) of Title VII of the Civil Rights Act of 1964, the 'Notice of Right to Sue' has been issued to the following Charging Parties: ". Thereafter appear the names of nineteen persons who, it is clear from the context, were among the thirty-four charging parties and are those who rejected the conciliation agreement, a copy of which is also in evidence.[1]

In the record also are two of the nineteen letters sent by the Commission and referred to as the "Notice of Right to Sue." The text of the letter is set out in a footnote.[2]

On October 11, 1968, a letter was received by the United States Attorney's office in Richmond from Virginia B. Slaughter. Whether it was actually addressed to that office or to the Clerk of this Court is not apparent from the record. Mrs. Slaughter said: "I am writing you in regards of myself and the other girls in the case no's up above. We filed suit with the Federal Government

---

1. Those nineteen are, listed alphabetically: Thelma Austin, Shirley Bishop, Della Croom, Audrey T. Hall, Sybil Harper, Dorothy Heppert, Anne N. High, E. A. Hume, Gladys Johnson, Gladys N. Jones, Edith Mann, Edith Morgan, Alice Parsley, Elizabeth S. Saunders, Betty Shires, Elsie Shires, Virginia B. Slaughter, Weda Swift, Dorothy Willis.

2. Notice of Right to Sue within 30 days, dated October 1, 1968. "This is to advise you that conciliation efforts in the above matter have failed to achieve voluntary compliance with Title VII of the Civil Rights Act of 1964. Pursuant to Section 706(e) of the Act, you are hereby notified that you may, within thirty (30) days of the receipt of letter, institute a civil action in the appropriate Federal

District Court. If you are unable to retain an attorney, the Federal Court is authorized in its discretion, to appoint an attorney to represent you and to authorize the commencement of the suit without payment of fees, costs or security. If you decide to institute suit and find you need assistance, you may take this letter, along with the Commission determination of reasonable cause to believe Title VII has been violated, to the Clerk of the Federal District Court nearest to the place where the alleged discrimination occurred, and request that a Federal District Judge appoint counsel to represent you. Please feel free to contact the Commission if you have any questions about this matter." Signed by Robert L. Randolph, Director of Compliance.

for discrimination in sex's [sic] in 1966. We have been notified to get in touch with you. We are unable to hire attorney. We are requesting the Federal District Judge to please appoint us counsel \* \* \*." The letter made reference to case numbers AT 6–12–950 and AT 6–12–950U, which numbers one may infer from the letter from Randolph to Dugan, designate the charges brought by Mrs. Slaughter alone.

Subsequent correspondence was with the Clerk of this Court. Two letters from Mrs. Slaughter dated October 19 and received October 28 set forth lists of names, first, of "the girls that are listed in the suit with Reynolds Metal Co. 11th Byrd St," [3] and, second, of "the girls that were in the same spot with us, laid off, but did not file with the Equal Employment Opportunity, but they wish to go along with us on the charge." [4]

An order was entered on October 28, 1868, under the style of Virginia B. Slaughter, et al. v. Reynolds Metals Company, directing that, "Whereas the plaintiffs have exhausted their complaints against the respondents through the Equal Employment Opportunity Commission \* \* \* and move this Court to appoint counsel to represent them in this cause, it is ORDERED that \* \* \* plaintiffs are directed to appear [on] November 5, 1968, to show cause why said attorney should be appointed to represent them."

These were all of the papers on file on October 31, when the thirty day period expired. On November 14, 1968, this Court issued an order appointing counsel and granting a plenary hearing on all issues; at this time the action was still styled Slaughter et al. v. Reynolds Metals Company. On December 13,

court-appointed counsel filed a complaint, captioned Austin et al. v. Reynolds Metals Company and Aluminum Workers International Union, Local No. 400. This Court has concluded that under these circumstances the dispute was fairly before the Court before the thirty day period elapsed. One might contend that the order of October 28, referring to the "cause," estopped this Court from determining later that no case was then pending. Witherspoon v. Mercury Freight Lines, 59 L.C. ¶ 9219, 6899 (S.D.Ala. 1968). But that doctrine is awkward, and the Court's assurances in this case were much less clear than in the case cited. Estoppel doctrine need not be resorted to. The letters on file in this instance seem adequate, albeit probably in need of amendment, so that final dismissal on defendant's motion would have been improper. In this vital respect the instant case differs from Green v. Ford Motor Co., 70 L.R.R.M. 3180 (W.D.Okla. 1969), in which the plaintiff got no papers stating his claim into Court in the requisite time.

The thirty day period of 42 U.S.C. § 2000e–5(e) is extremely short, yet Congress apparently intended lay parties to convert their disputes in this time from administrative complaints, prosecuted informally by a public body at no expense to the injured party, to plenary civil actions, with the initiative and, unless the court orders otherwise, financing provided by the complainant. In the course of litigation under the 1964 Act certain principles to be referred to in the application of the statute have emerged. First, parties are not to be prejudiced in the assertion of their right to equal treatment by the fact that the Commission fails or refuses to attempt the voluntary conciliation which the Act contemplates as a threshhold remedy,

3. The names listed were: Edith A. (Hume) Falwell, Weda Swift, Dorothy Heppert, Shirley Bishop, Edith Mann, Gladys Johnson, Dorothy Willis, Thelma Austin, Lucy Hughs, Sybil Harper, Ann High, Edith Morgan, Betty Saunders.

4. The names listed were: Mozelle Burns, June Narron, Marion Thompson, Lucille Powers, Anna Sims, Margaret G. Martin, Margaret Horsley, Helen Chapman, Cora Lee Melton, Catherine E. Nelson, Hilda S. Dean, Elsie Shinault, Dorothy H. Hord, Dorothy A. Earnhardt, Margaret Dearhart.

Quarles v. Philip Morris, Inc., 271 F. Supp. 842 (E.D.Va.1967). It has also been held that the sixty day period which the Act specifies as the maximum during which conciliation should be attempted, 42 U.S.C. § 2000e–5(e), does not, in conjunction with other time periods specified, constitute a strict limitation upon the time to sue. The sixty day term is directory, not jurisdictional, Cox v. United States Gypsum Co., 409 F.2d 289, 291, n. 4 (7th Cir. 1969). Thus, although a complainant may have a right to demand notice of his right to sue from the Commission when efforts to conciliate have not met with success in the initial sixty day period, still the pursuit of informal, administrative procedures past that time will not shorten the time available to bring the case to court. Conceivably conciliation attempts might far exceed sixty days. Therefore there is no definite time period after the cause of action accrues which a putative defendant could rely on as a bar to suit.

■ Once a complaint has been filed with the Commission, then, in principle the complainant is not to be injured by this agency's prolonging or abandoning administrative remedies, actions which are beyond the individual's power to control. "The plaintiff is not responsible for the acts or omissions of the Commission." Quarles v. Philip Morris, Inc., *supra*, 846.

In this case the Commission, having undertaken conciliation efforts and having succeeded in bringing fifteen charging parties to agreement, sent the letter quoted above to the remaining nineteen. The letter obviously is an attempt to communicate the applicable statutory provisions to laymen, and, as both sides in this case have admonished the Court, the agency's interpretation of the statute it applies is entitled to considerable weight, Weeks v. Southern Bell Telephone and Telegraph Co., 408 F.2d 228 (5th Cir. 1969). The letter issued by the Commission informs the charging party that he "may, within thirty (30) days of the receipt of letter, institute a civil action in the appropriate Federal District Court." But the letter does not state unequivocally that "A civil action is commenced by filing a complaint with the court," Fed.Rules Civ.Proc., Rule 3, 28 U.S.C., nor does it convey the requisites of a complaint in federal practice, see Fed.Rules Civ.Proc., Rule 8(a). Rather, it advises that "[i]f you decide to institute suit and find you need assistance, you may take this letter, along with the Commission determination of reasonable cause * * *, to the Clerk of the Federal District Court * * *, and request that a Federal District Judge appoint counsel to represent you." The Court considers this letter, read as a whole, to be a very misleading document. The letter in fact leaves it remarkably unclear just where the initiative lies, in particular, when a request for appointment of counsel has been made to the Court. The plaintiffs ought not to be prejudiced if they phrased their appeal to the Court consistent with the instructions of the Commission.

In this case, more than a bald request for the appointment of counsel was made. Rather, Mrs. Slaughter had submitted to the Court the names of thirteen parties who had filed charges with the Commission and others who had not but who allegedly wished to file suit as well. The Court could infer from her as well that all persons named were allegedly victims of sex discrimination by the two defendants, that the complaint specifically concerned layoff procedures, and that some at least had exhausted their remedies within the Commission and had been "notified to get in touch with you." The Court's response to these papers was to order the consolidation of various Commission cases and to schedule a hearing concerning the appointment of counsel to represent them "in this cause."

The federal rules of pleading are not rigid. Although the maxim would be difficult to apply if taken to the limit of its logic, courts are admonished that a complaint should not be dismissed for insufficiency under Fed.Rules Civ.Proc., Rule 12(b) (6), 28 U.S.C., "unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). See also, Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944). If a complaint is so unclear that an answer cannot be framed, a defendant's solution is to move for a more definite statement or to use discovery devices. In any event, in federal practice leave to amend is to be granted with liberality, Fed.Rules Civ.Proc. Rule 15, 28 U.S.C., F. James, Civil Procedure, § 2.11, at 86 (1965), and normally a motion under Rule 12(b) (6) will not be granted without leave to plead over. An amended claim, moreover, relates back in time to the first pleading if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," Fed.Rules Civ. Proc. Rule 15(c), 28 U.S.C.

At most then, had the letters on file from Mrs. Slaughter been attacked for insufficiency, the defendants could have obtained an order in effect requiring the allegations to be particularized. "[c]laims of legal substance should not be forfeited because of a failure to state them with technical precision." Coleman v. Peyton, 340 F.2d 603 (4th Cir. 1965). "[W]here a plaintiff pleads *pro se* in a suit for the protection of civil rights the court should endeavor to construe the plaintiff's pleadings without regard for technicalities," Picking v. Pennsylvania R. Co., 151 F.2d 240, 244 (3d Cir. 1945), cited in Beard v. Stephens, 372 F.2d 685, 689 (5th Cir. 1967). To warrant dismissal of the complaint for failure to state a claim it would have to appear from the papers addressed to the court that a cause of action does not exist and that the plaintiff, if given every chance to sharpen his allegations, could not cure the defects. See Garcia v. Hilton Hotels International, 97 F. Supp. 5 (D.P.R.1951). The termination of litigation at the pleading stage is highly disfavored; our system has sacrificed early joinder of issue for the resolution of claims on trial.

The reference to the exhaustion of Commission remedies and the Commission's notifying the plaintiffs to "get in touch" with the Court make manifest what stage the proceedings had reached and what steps these lay parties were taking.

In this case, moreover, the defendants knew that any claims of employment discrimination which might properly be sued upon would be closely related, at least, to what charges were before the Commission and were discussed during conciliation. Universally it has been held that the Commission procedures cannot be bypassed entirely when an employment practice is challenged. Although all plaintiffs, perhaps, need not have pursued administrative conciliation, still the complaint cannot go far beyond the original charges. King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968). Thus it would seem possible that the standard of "notice" pleading contemplated by the Federal Rules may be somewhat more easily satisfied in cases of this nature. Professor Moore's comments are apposite: "Statutes of limitations are designed to ensure that parties are given formal and seasonable notice that a claim is being asserted against them. Rule 15(c) is based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitation than one who is informed of the precise legal description of the rights sought to be enforced." 3 Moore's Federal Practice, ¶ 15.15 [2], at 1021.

Precedent in this very court exists for the relation back of demands for new relief even where such relief could not be granted as the subject of a new action because of the bar of the limitations period. Wirtz v. Atkins, 247 F.Supp. 503 (E.D.Va.1965). Thus that claim for back wages were only made on the plaintiff's submission of December 13 does not preclude such an award.

Nor do other possible defects and omissions necessarily indicate that no suit was pending within the thirty day pe-

riod. Payment of a filing fee prior to the running of the period is not required to avoid dismissal. Johannson v. Towson, 177 F.Supp. 729 (M.D.Ga.1959). Nor, when a citizen desires to proceed *in forma pauperis*, is it necessary that such leave be granted before a complaint seeking to vindicate a federal right will be deemed filed, for the purposes of interposing the claim, Mohler v. Miller, 235 F.2d 153 (6th Cir. 1956). In this case, reading the plaintiffs' letters in conjunction with the notice sent by the Commission, it is plain that their application was for leave to proceed without payment of costs, and it has been so treated by the Court. That process did not issue·immediately is likewise no defect; an action does not for that reason abate and process may issue at any time.

■ Consequently this Court holds that a civil action was brought within the terms of 42 U.S.C. § 2000e–5(e), within thirty days of receipt of notice. Congress has provided that alleged violations of Title VII shall be dealt with administratively to begin with and also that the civil suit may proceed in the hands of court-appointed counsel. The "charge" which initiates Commission proceedings is read generously, Georgia Power Co. v. Equal Employment Opportunity Commission, 295 F.Supp. 950 (N.D.Ga.1968). To fulfill the remedial purposes of the Act, and in an effort to employ workable procedures for the transfer of the charge from administrative to judicial hands, courts should not demand much more of a "home drawn" attempt to bring the matter before a federal court.

■ Defendants say that a private suit is in any case barred because the Commission obtained the "voluntary compliance" of Reynolds and Local 400 with Title VII of the Act. In evidence is a copy of a "conciliation agreement" signed by fifteen charging parties and by agents of Reynolds, Local 400, and the Commission. It is not the statutory scheme that the Commission's interpretation of "compliance" with the Act be nonreviewable, nor that a party's charges

can be kept from the Court by the settlement of similar charges as between the accused discriminators and employees similarly situated. See Cox v. United States Gypsum Co., *supra*. In any case, it is not now apparent with the clarity required on a motion to dismiss that the changes in employment procedures wrought by the conciliation agreement in fact amend those practices which the instant plaintiffs believe illegal. Dismissals for mootness are disfavored in Title VII actions. Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968).

The Commission itself stated in its letter of October 1, 1968, that, a "satisfactory settlement" not having been achieved with all of the charging parties, a notice of right to sue would issue to them. The Commission apparently views its role as that of negotiating settlement, rather than applying a statute; courts should construe its acts accordingly. Had the Commission conceived that its endorsing a settlement of certain claims against an employer and union had the effect of denying these plaintiffs a day in court, it quite possibly would have been reluctant to do so. For a court to consider such agreement as a bar to suit would drastically alter the enforcement scheme which has developed, making the Commission final arbiter of the legality of certain practices; final, however, only when it chose to be so, for it is settled that it need actually·make no conciliation efforts at all. Under the pattern advocated by the defendants, moreover, it would make no difference that, as here, some employees concurred in the settlement. Their opinion as to the legality of the new practices could hardly be material, if that decision were up to the Commission.

It seems plain enough that Congress envisioned conciliation to be a process of "informal negotiation between the parties," 42 U.S.C. § 2000e–5(a), with Commission guidance, but intended that the individual remain the master of his lawsuit.

Both defendants also seek dismissal of certain parts of the complaint on the

ground of failure to comply with the rule that charges must be filed with the Commission "within ninety days after the alleged unlawful employment practice occurred. * * *," 42 U.S.C. § 2000e–5(d). The defendants contend that the plaintiffs Austin, Bishop, Harper, Heppert, Mann, Morgan, Saunders and Swift filed no charges concerning the June 1966 layoffs, and that plaintiffs High, Falwell, Slaughter and Willis filed more than ninety days after the alleged acts of discrimination in June.

Insofar as the complaint charges discrimination in a November 1966 layoff, Reynolds contends that plaintiffs High and Falwell cannot be heard for failure to file charges with the Commission.

The plaintiffs' complaint goes beyond discrimination in layoffs alone. The allegations, fairly read, include discrimination in recalls subsequent to the June and November layoffs, the retention of males with less seniority throughout the layoff time, and discriminatory hiring, during the layoffs, of males to take the plaintiffs' positions. They also claim that separate seniority lists were maintained during the layoffs and that the defendant Local 400 declined to process grievances on behalf of the plaintiffs; no date for the union's so acting is given. The defendants submit an affidavit on the issue, and the plaintiffs have appended as an exhibit a letter to the Commission; thus the issue takes on the character of a motion for summary judgment under Fed.Rules Civ.Proc., Rule 12(b), 28 U.S.C.

Plaintiffs' Exhibit 1, dated July 7, 1966, is a letter to the Commission complaining about the June 17th layoffs; Falwell (Hume), High, Slaughter, and Willis signed it, along with other employees. That the charges were not made "under oath" at that time is of no consequence; such a defect is amendable and has been amended. It is significant as well that the Commission proceeded to investigate unsworn charges. Weeks v. Southern Bell Telephone & Telegraph Co., *supra*; Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968);

Georgia Power Co. v. Equal Employment Opportunity Commission, *supra*. The plaintiffs concede, however, that no plaintiffs other than the four named have sought administrative investigation of the June layoff, and that Falwell and High have not complained to the Commission concerning the November, 1966, layoff. The allegations in the complaint, as noted, strike more broadly than at the layoff alone; clearly the seniority system and rights which flow therefrom are called into question, and hiring practices, as well, are attacked. These allegations of continuing discrimination might well have been brought before the Commission more than ninety days after the layoffs. See Cox v. United States Gypsum Co., *supra*; Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232 (N.D.Ga.1968); compare Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967). This has not been done, so far as the record shows, in this case.

This does not end the matter. The relief sought by all plaintiffs is prospective in part, in that they ask this Court to order modifications in seniority systems so as to remove illegal aspects, and in part compensatory, the award of back pay for layoff periods. Where class actions have been brought under Title VII, in general those who did not file administrative charges have been held eligible only for injunctive relief. The leading case is Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn. 1966), concerning intervention. See Jenkins v. United Gas Corp., *supra*; Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Colbert v. H–K Corp., 295 F.Supp. 1091 (N.D.Ga. 1968); King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968); Moody v. Albermarle Paper Co., 271 F.Supp. 27 (E.D.N.C.1967); Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va. 1968). It is not entirely clear whether such a restriction emanates from the principle of exhaustion of administrative remedies within the Commission or from the terms of Fed.Rules Civ.Proc., Rule 23

(b) (2), 28 U.S.C., which contemplates injunctive or declaratory relief only, see 3B Moore's Federal Practice, ¶ 23.40, at 23–654. In any case, under Hall v. Werthan Bag Corp., *supra,* the plaintiffs who failed to file with the Commission must be permitted to intervene to participate in trial of the issue of injunctive relief. Little would be gained by requiring the Commission to process their claims at this point.

One case only has been found in which non-charging parties were permitted to sue for damages. In Antonopulos v. Aerojet-General Corp., 295 F.Supp. 1390 (E.D.Cal.1968), which the court termed a "hybrid action," *Id.,* 1394, as distinguished from a class action, persons whose names were listed on the charge filed with the Commission were permitted to seek back pay awards. The court stressed, however, that the Commission had known of the other plaintiffs' claims when it attempted conciliation. "The Commission framed its decision in class action language, but they were not dealing with the usual large, amorphous group. The employees who concerned them were limited in number and individually identified in the Commission's records," Antonopulos v. Aerojet-General Corp., *supra,* 1394. It would seem, however, that when any charge of race or sex discrimination is made and investigated, the Commission of necessity will be on notice that others similarly situated exist. Any Title VII action is by nature a class action of sorts, Jenkins v. United Gas Corp., *supra,* and the conciliation efforts undertaken will focus on amending a general policy inconsistent with law. See Newman v. Piggie Park, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). If charges filed with the Commission are to be construed liberally, it would seem that much ought not to be made to hinge upon whether other victims are identified by name or simply as a class.

■ The right to individual compensation, while an element of federal policy incorporated in the act, 42 U.S.C. § 2000e–5(g), is not so important as injunctive relief from a policy injurious to the public as a whole. Individuals can consistently be required to prosecute administrative charges at their own initiative in order to be eligible for damages. Possibly the court in *Antonopulos* believed that the charging party intended her submission to be a joint claim and honored it as such, or that at any rate the administrative agency had behaved accordingly. But to allow any individual to recover damages for a practice of which he has not complained administratively would frustrate the Commission's role in a manner which has been consistently disapproved. Johnson v. Seaboard Air Line Railroad Co., 405 F.2d 645 (4th Cir. 1967). The Commission's conciliation efforts amount essentially to negotiations over a settlement satisfactory to all concerned and consistent with the Act. Success is not always complete, as this case shows. But there will be no genuine opportunity to conciliate if all of the aggrieved individuals are not before the Commission and the magnitude of their claims is not apparent. Therefore this Court holds that although non-charging parties may intervene on the issue of injunctive relief, they may not now sue for damages.

■ This ruling ought not to bar the plaintiffs, High and Falwell, from a recovery from the second layoff, however. No case directly on this point has been found, but the complaints made by these two, at least, concerned the entire seniority system. Allegedly they lost pay during the November layoff because of the application of that system to them; damages are claimed for the continuing effects of that system. Had the layoff of June continued throughout the period of conciliation, and even beyond, certainly it would not be beyond this Court's power to award back pay for the full term. This case differs little from such an instance. If an allegation to the Commission of continuing discrimination can bring events which occurred before the prior ninety days to the Commission's attention, as discussed above, there is no reason to say that it cannot reach

**1154**

later events, at least during the period of conciliation.

 Local 400 contends, lastly, that any claim based on its failure to file grievances must have its jurisdictional basis in 29 U.S.C. § 185 rather than in the statutes cited, and must allege conduct which is discriminatory or in bad faith. Certainly a party is not required to state the jurisdictional basis of his claim with precision; in federal courts one need only state "a claim upon which relief can be granted," Fed.Rules Civ. Proc. Rule 12(b) (6), 28 U.S.C. As for the second contention, the Court views allegations of discrimination on account of sex to be within the requirements of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

It would seem, alternatively, that Vaca v. Sipes, *supra,* has no application to this case. Suit is not brought here to compel compliance with the terms of a collective bargaining contract; rather rights derived from another sector of federal law are to be vindicated. These rights do not depend upon the terms of the labor agreement and are not conditioned in any manner upon the plaintiffs' presenting their claims within the contractual grievance machinery prior to suit. Culpepper v. Reynolds Metals Co., *supra,* 1236. Thus there is no need to plead and prove reasons for avoiding those processes. Likewise, strictly speaking unfair representation is not a necessary element of the claim. Instead the plaintiffs must show one or more of the unlawful "labor organization practices" of 42 U.S.C. § 2000e–2 (c). Local 400's motion to dismiss on this ground is therefore denied.

 The foregoing discussion has proceeded upon the assumption that the 1964 Civil Rights Act provided the only possible basis for the plaintiffs' cause of action. Counsel have *not* briefed nor argued the question of the applicability of 42 U.S.C. § 1981, part of the 1866 Civil Rights Act, to discrimination in employment on the basis of sex. Dismissal at the pleading stage should not be granted when, under the facts alleged, any relief may be due. But the Court is reluctant to rule on the application of § 1981 without the assistance of counsel. Leave is granted to those plaintiffs who have been limited under today's order to injunctive relief to move to vacate the order in its restrictive aspect, supporting their motion with memoranda. In this regard the attention of counsel is directed to Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (Dec. 15, 1969) (concerning §§ 1982 and 1988); Scott v. Young, 421 F.2d 143 (4th Cir. 1970); United States v. Medical Society of South Carolina, 298 F.Supp. 145 (D.S.C.1969); Culpepper v. Reynolds Metals Co., *supra,* 296 F.Supp. 1243; Colbert v. H. K. Corp., *supra;* Dobbins v. Local 212, International Brotherhood of Electrical Workers, 292 F.Supp. 413 (S.D.Ohio 1968).

An order will issue consistent with this memorandum.