Lamont K. **CRAWFORD,** Plaintiff,

v.

**WILLOW OAKS COUNTRY CLUB, INC.,** Defendant.

No. Civ.A. 399CV533.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 29, 1999.

Vickey Ann Verwey, Richmond, VA, David R. Simonsen, Jr., Richmond VA, for Lamont K. Crawford, plaintiff.

Lynn Forgrieve Jacob, Williams, Mullen, Clark & Dobbins, Richmond, VA, for Willow Oaks Country Club, Inc., defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER is before the Court on the Defendant Willow Oaks Country Club's MOTION TO DISMISS or, in the alternative for PARTIAL SUMMARY JUDGMENT. For the reasons stated below, the Court DENIES the Motion.

### I. Background

This is an action alleging both racial discrimination in employment in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (" § 1981") and defamation in violation of Virginia law. The following facts are undisputed: Plaintiff Lamont K. Crawford, an African–American male (herein "Crawford"), was employed by Defendant Willow Oaks Country Club (herein "Willow Oaks"), a Virginia corporation. Motion for Judgment at ¶¶ 1, 10–16. At the time of his discharge on May 19, 1999. Crawford was employed in the position of Sous Chef. *Id.* at ¶ 15. Crawford was supervised by Raoul B. Hebert, Executive Chef of Willow Oaks (and also indirectly by Willow Oaks General Manager and Chief Operating Officer P. Daniel Deboer). *Id.* at ¶¶ 3, 24, 30. Crawford alleges that Hebert subjected him and other African–American employees under his supervision to racially offensive "jokes" and derogatory comments. *Id.* at ¶¶ 26–29. Crawford also alleges other discriminatory acts:

1. That Willow Oaks wrongfully refused to pay Crawford for overtime work, on the basis of race, *id.* at ¶¶ 17–22;

2. That Willow Oaks wrongfully terminated Crawford's employment on the basis of race after he informed Willow Oaks of his need for a medical leave of absence from work under the Family Medical Leave Act, despite his attempts to provide Willow Oaks with appropriate documentation in support of such leave, *id.* at ¶¶ 33–44; and

3. That Willow Oaks has wrongfully refused to provide severance pay to Crawford on the basis of race, *id.* at ¶¶ 31–32.

Crawford alleges further that Deboer defamed him at a meeting of Willow Oaks food service employees convened later in the day on May 19, 1999, after he had been discharged. *Id.* at ¶¶ 45–46. Crawford alleges that Deboer made slanderous remarks concerning the quality of his work in general, and his cooking abilities in particular. *Id.* at ¶¶ 46–48. Willow Oaks denies these allegations. *See generally* Defendant's Answer. Since the matter is before the Court on a motion to dismiss, the Court must accept the allegations of the Complaint as true.

### II. Standard of Review

A plaintiff bears the burden of proving that the federal district court has subject matter jurisdiction over his or her claim; this burden does not shift when defendants challenge the assertion of jurisdiction by a federal district court. *Materson v. Stokes,* 166 F.R.D. 368, 370 (E.D.Va.1996). The non-movant has the burden of alleging and proving subject matter jurisdiction upon the filing of a motion to dismiss for lack of such jurisdiction. *Marks v. U.S. Social Sec. Admin.,* 906 F.Supp. 1017, 1020 (E.D.Va.1995). The function of motions to dismiss is to test the law governing claims, not the facts which support them. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Spell v. McDaniel,* 591 F.Supp. 1090 (E.D.N.C. 1984). The Court should not dismiss any count unless it appears beyond a doubt that the plaintiff could not recover under any set of facts which could be proven. *See Doby v. Safeway Stores, Inc.,* 523 F.Supp. 1162 (E.D.Va.1981); *Austin v. Reynolds Metals Co.,* 327 F.Supp. 1145 (E.D.Va.1970).

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the nonmoving party is entitled to judgment as a matter of law. F.R.C.P. 56(c). *See also Beale v. Hardy,* 769 F.2d 213, 214 (4th

Cir.1985). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr. Extension Serv.*, 815 F.2d 1001, 1004 (4th Cir.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e). . . . Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (emphasis original).

### III. Analysis

The main legal issue in Defendant's Motion is whether bona fide private membership clubs are exempt from the civil rights provisions of § 1981. Willow Oaks argues that private clubs are entitled to such an exemption, despite the absence of express language in § 1981 to that effect. If private clubs do enjoy such an exemption, Willow Oaks argues that the Court is therefore deprived of subject matter jurisdiction over Crawford's claims. Willow Oaks offers two main arguments to support its contention that private clubs are exempt: (1) that the private clubs exclusion in Title VII applies to § 1981 claims; and (2) that the private clubs exemption in Title II applies to § 1981 claims. For the reasons discussed below, neither of these arguments suffice to imply a private club exclusion into § 1981.

■ Among principles of statutory construction, few are so widely accepted as the admonishment to courts not to use substantive portions of one statute to modify another statute without express Congressional direction to do so. Nowhere in the language of Title VII or Title II may one find an expressed or implied instruction by Congress to apply the private club exclusions of these two statutes to § 1981, a separate and distinct weapon against discrimination. Nor may one find any instruction in either the text or the legislative history of § 1981 to borrow the private clubs exclusion from Titles VII or II. More significantly, such an instruction is also absent from the text of the Civil Rights Act of 1991, in which Congress had an opportunity to add a private clubs exclusion to § 1981 had it so desired. Congress did not take advantage of that opportunity, nor did it use the legislative history of the Civil Rights Act of 1991 to suggest that courts create a private club exclusion out of whole cloth. Absent such language, the Court will not grant private clubs the license to treat their employees in a discriminatory manner, solely on the basis of those clubs' private membership. § 1981 is sound and clear on its face.

■ In refusing to graft a private clubs exclusion from other statutes onto § 1981, the Court rejects analysis cited by Willow Oaks from *Hudson v. Charlotte Country Club, Inc.*, 535 F.Supp. 313 (W.D.N.C. 1982). In *Hudson*, the court held that the Title VII private clubs exclusion should be applied to actions brought under § 1981, despite the absence of any language in either statute to support such an application. *Id.* According to the court in *Hudson*, "[i]f private clubs, exempt from employment discrimination suits under Title VII, are nonetheless liable to suit under § 1981 for exactly the same offense, then the exemption in Title VII has no meaning and no practical effect." *Id.* at 317. Willow Oaks argues in part that this conclu-

sion must stem from the avowed purpose of the Title VII private clubs exclusion, which is to protect private clubs' freedom of association under the First Amendment. However, the First Amendment's guarantee of freedom of association does not extend to discriminatory acts such as those alleged in the Complaint. Willow Oaks apparently suggests that it is free under the First Amendment to dismiss an employee for any reason it likes, including reasons stemming from racial animus. This suggestion is specious. The freedom to associate with persons and groups of one's own choosing cannot reasonably be construed as the freedom to discriminate in the context of an employment relationship against someone with whom you have already associated. Subject to the constraints of state and federal laws against discrimination, private clubs are free to associate with whomever they choose, whether by accepting new members or hiring new employees. Once a private club hires an employee (and thus chooses willingly to associate with that person), however, the law is clear: that employee must be treated in a non-discriminatory manner. This is not to suggest that a private club cannot choose to disassociate itself from an employee by terminating that employee. The Court merely reaffirms the unremarkable notion that the First Amendment's freedom of association does not shield a private club from liability if it chooses to treat its employees in a discriminatory fashion, including wrongfully terminating an employee on the basis of race.

The value of *Hudson* as binding precedent is also diminished greatly by the passage of the Civil Rights Act of 1991, less than a decade after the *Hudson* decision. As noted above, Congress had the opportunity to add a private club exclusion to § 1981, or in the alternative to suggest that courts borrow a private club exclusion from elsewhere. It declined to do so. This Court is therefore not inclined to alter an otherwise sound statute by judicial fiat.

■ As an alternate theory, Willow Oaks contends that the Title II private club exemption should be extended to exempt it and other private clubs from liability under § 1981. Willow Oaks looks to *Tillman v. Wheaton–Haven Recreation Association* for support, in which the Fourth Circuit held that the Title II private club exemption "of necessity operates as an exception to the Act of 1866 [§ 1981], in any case where the Act prohibits the same conduct which is saved as unlawful by its terms." *Tillman v. Wheaton–Haven Recreation Assoc., Inc.*, 451 F.2d 1211, 1214 (4th Cir.1971). The Fourth Circuit reached this conclusion in part because it found that Congress, in enacting the Civil Rights Act of 1964 (which created Title II), believed that it was "writing on a clean slate"; i.e., Congress believed in 1964 that it was crafting the first comprehensive statute prohibiting discrimination in both public and private arenas. *Id.* at 1214 n. 5. The Fourth Circuit found that Congress' decision to include a private club exemption in Title II impliedly modified § 1981, an earlier statute aimed at preventing the same manner of discriminatory practices as those prohibited by the Civil Rights Act of 1964. *Id.*

Contrary to Willow Oaks' assertion, *Tillman* does not support the application of Title II's private club exemption to § 1981 claims. Like *Hudson*, the *Tillman* decision came years before the passage of the Civil Rights Act of 1991, in which Congress declined to extend a private club exclusion to § 1981. As a result, *Tillman*'s value as precedent is similarly called into serious question. Further, *Tillman* centered not on questions of discrimination in the employment context, but rather in the context of membership. *Id.* The plaintiffs in *Tillman* were members of a private swimming club association which systematically denied admission to African–Americans, be they guests of current members or applicants for membership. *Id.* at 1213. The Fourth Circuit held that the private club exemption excluded private clubs such as the defendant swimming

pool association. *Id.* at 1214–15. Because *Tillman* was primarily concerned with questions of discrimination in membership and not employment, the Court believes that this holding is not apposite to the instant case. As discussed above, efforts to exclude private clubs from the reach of federal anti-discrimination laws are premised primarily on respect for those clubs' freedom to associate with whomever they choose. By hiring an employee, a private club has exercised its freedom of association. This freedom is not compromised by thereafter prohibiting that club from discriminating against those with whom it has willingly associated. Ruling to the contrary would effectively allow private clubs to discriminate against employees with impunity, a result clearly not intended by Congress.

For these reasons, the Court holds that § 1981 is not subject to the private club exclusions of Titles VII or II. Plaintiff's Motion to Dismiss/For Partial Summary Judgment is therefore DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

And it is SO ORDERED.