Juanita VOGEL, Plaintiff,

v .

TRANS WORLD AIRLINES, Defendant.

Civ. A. No. 17706-3.

United States District Court,
W. D. Missouri, W. D.

Sept. 25, 1970.

As Amended Oct. 2, 1970 and
May 10, 1971.

Sol M. Yarowsky, Leonard B. Rose, Kansas City, Mo., for plaintiff.

James J. Mollenkamp, Kansas City, Mo., for defendant.

## MEMORANDUM FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

WILLIAM H. BECKER, Chief Judge.

This is an action under the Equal Employment Opportunity Act, Section 2000e–5, Title 42, United States Code, brought by plaintiff who charges sex discrimination in defendant's refusal to permit her to work overtime solely because of her sex. It has been agreed by the parties, and it is independently found by the Court, that plaintiff has exhausted administrative remedies as required under Section 2000e–5, supra.[1]

1. The facts stipulated and those evidenced by the decision of the EEOC, which is incorporated by reference into the stipulation of facts, show conclusively that administrative remedies in the state agency and in the Equal Employment Opportunity Commission were exhausted. The administrative prerequisites to bringing an Equal Employment Opportunity action have been described by this Court in Everett v. Trans World Airlines (W. D.Mo.) 298 F.Supp. 1099, as follows:

"Section 2000e–5, Title 42, U.S.C., provides that where there is an alleged unlawful employment practice occurring in a state, or a political subdivision

The facts in this case, which have been stipulated by the parties, are as follows. Plaintiff is a fully qualified mechanic who had the seniority which entitled her to work overtime during the week ending February 12, 1967, and other weeks subsequent thereto, but was denied by defendant (after her request) the opportunity to work more than 54 hours weekly because of her sex. On the other hand, male employees of defendant who had less seniority than plaintiff were permitted to work more than 54 hours in such weeks. In the assignment of overtime work to its female employees in Missouri, defendant at all relevant times uniformly limited their hours of employment to no more than nine (9) hours during any one day and to no more than 54 hours during any single week in reliance upon § 290.040 RSMo, V.A.M.S. (which limits the working hours of female employees in certain industries, including transportation and common carriers to 9 hours per day and 54 hours per week), Opinion No. 45, dated January 31, 1967, of the Attorney General of Missouri (holding that the Missouri statute creates a "bona fide occupational qualification within the meaning of Section 703(e) of Title VII of the Civil Rights Act of 1964") and the statement of the Equal Employment Opportunity Commission issued August

thereof, which has a state or local law prohibiting the alleged practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, those proceedings must first be commenced before the state commission. A written charge can then be filed before the national Equal Employment Opportunity Commission 60 days or more after the commencement of such proceedings, unless such proceedings have been earlier terminated. If that Commission then determines that there is reasonable cause to believe that the charge is true, it will endeavor to eliminate the unlawful practice by informal methods of conference, conciliation and persuasion. The claim filed with the national Commission by the person claiming to be aggrieved must be filed, where the state proceedings have been followed, within 210 days after the occurrence of the alleged unlawful practice, or within 30 days after receiving notice that the state or local agency has terminated the proceedings under state or local law, whichever is earlier. If within 30 days after the charge is filed with the national Commission, voluntary compliance has not been obtained, and the Commission shall notify the aggrieved, a civil action may be brought by him within 30 days thereafter." 298 F. Supp. at 1101.

The stipulation and attached papers show literal compliance with the time provisions of Section 2000e–5 and with the exhaustion provisions of the Act. The actions complained of are alleged to have taken place during the week of February 12, 1967, and thereafter. On March 10,

1967, plaintiff filed a "charge of discrimination" in writing with the national Commission. On the same date, the Commission deferred it to "the appropriate State agency." More that 60 days later, on May 18, 1967, the "decision" of the national Commission recites, "Charging party requested that the Commission assume jurisdiction over the charge." The charge was served on defendant on November 9, 1967, the decision of the national Commission finding "[r]easonable cause to believe that Respondent committed and is committing unlawful employment practices" was rendered on February 28, 1969; plaintiff was notified that conciliation efforts had failed and that she had a right to bring suit in this Court by letter of the EEOC dated September 11, 1969; and the complaint herein was filed on October 2, 1969. The statement of the Commission in the "decision" attached to the stipulation (and incorporated therein) that the charge filed on May 18, 1967, was filed "within the jurisdictional time limits prescribed by Title VII" is uncontradicted evidence that notice of termination of state proceedings was not received by plaintiff more than 30 days prior to May 18, 1967. Thus the question of whether the charge was timely filed in the national Commission under the rule of Love v. Pullman Co. (C.A. 10) 430 F.2d 49, and Washington v. Aerojet-General Corporation (C.D.Cal.) 282 F.Supp. 517, can be answered in the affirmative. Also, the 30 days allowed by the statute for achievement of compliance by the national Commission has been held to be directory rather than mandatory. See Dent v. St. Louis-San Francisco Railway Company (C.A. 5) 406 F.2d 399; Everett v. Trans World Airlines, *supra*.

19, 1966 (stating that the "Commission will consider limitations or regulations imposed by state laws as a basis for application of the bona fide occupational qualification exemption" but would not currently determine the validity of state statutes.)[2] After the week ending February 12, 1967, there were other occasions when plaintiff worked 54 hours and requested additional overtime which was available to male employees with less seniority, but which was refused to her by reason of defendant's compliance with the Missouri statute mentioned above. As a result plaintiff lost $200.00 additional salary. Additionally, after the week ending February 12, 1967, plaintiff worked several 48 hour weeks but elected not to work the overtime which was available to her because she would not have been permitted to work in excess of 54 hours because of defendant's compliance with the Missouri statute. It is agreed that plaintiff has lost $1,500.00 in additional salary from this cause. Plaintiff therefore prays for $1,700.00 as back pay in damages. In addition, plaintiff seeks a declaratory judgment under the provisions of § 2201, Title 28, United States Code, that "plaintiff shall be considered for overtime work by defendant without regard to her sex and without regard to any limitations imposed on employers pursuant to § 290.040 RSMo., 1959, V.A.M. S. as amended"; an injunction "forever restrain[ing] and enjoin[ing] [defendant] in the conduct of its employment practices from relying upon, or acting under, the provisions of § 290.040 R.S. Mo.1959, V.A.M.S., as amended, or any opinion relating thereto of the Attorney General of the State of Missouri insofar as the same discriminates between men and women" and an award of her attorney's fees expended in this action.

At the outset, the issue of whether a three-judge court should be convened pursuant to § 2281, Title 28, United States Code, must be resolved. On this question, the Equal Employment Opportunity Commission, as *amicus curiae*, has provided a brief. The applicable statute reads as follows:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such state in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under Section 2284 of this title."

It is thus well established that under the literal wording of § 2281, a three-judge district court is required to enjoin the enforcement of a state statute "upon the ground of the unconstitutionality of such statute." It is equally well established, however, that such a court has jurisdiction only if the state statute conflicts with a provision of the Constitution other than the Supremacy Clause. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194. Section 290.040 of the Missouri Revised Statutes is possibly repugnant to the Constitution solely because, and only to the extent, that it conflicts with Title VII of the Civil Rights Act of 1964 and the Supremacy Clause. Cf. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163.[3] Further, it is found herein that no issue of the validity of the Missouri

---

2. The statement is set out in full on pages 813 and 814, *infra*, as it is pertinent in the case at bar.

3. Goesaert v. Cleary is an example of a three-judge case wherein a state statute forbidding women from being licensed as bartenders and at the same time making an exception in favor of the wives and daughters of the owners of liquor establishments was challenged under the Equal Protection Clause. See the report of the trial court opinion in Goesaert v. Cleary (E.D.Mich.) 74 F.Supp. 735.

statute is raised by the facts presented. Therefore, it is concluded that a three-judge court should not be convened in this cause.

At an earlier juncture in the pretrial course of this case, defendant moved for a summary judgment under the provisions of Rule 56, F.R.Civ.P., asserting that plaintiff was denied overtime work in accordance with Section 290.040 RSMo, which prohibits the working of women in excess of 54 hours weekly, and that, in so denying overtime work to plaintiff, defendant acted in reliance on an EEOC statement issued August 19, 1966, in which the EEOC announced its intention not to invalidate state laws of this type except "in cases where the clear effect of a law in current circumstances is not to protect women but to subject them to discrimination." Although the statement was rescinded by the EEOC on February 24, 1968, defendant contends that it was in effect at the times of the alleged discriminations complained of in the case at bar. In denying the motion for summary judgment, the Court reasoned as follows:

"[D]efendant moves for a summary judgment. In support of that motion, defendant asserts that plaintiff was denied overtime work in accordance with Section 290.040 RSMo which prohibits the working of women in excess of 54 hours weekly, and that, in so denying overtime work to plaintiff, defendant acted in reliance on an EEOC statement issued August 19, 1966, in which the EEOC announced its intention not to invalidate state laws of this type except 'in cases where the clear effect of a law in current circumstances is not to protect women but to subject them to discrimination'. Although the statement was rescinded by the EEOC on February 24, 1968, defendant contends that it was in effect at the times of the discriminations complained of in the case at bar.

"Under the controlling provision, Rule 56, F.R.Civ.P., a summary judgment may be granted if the [prevailing] party is entitled to judgment as a matter of law and there is no 'genuine issue of material fact'. This is not the condition of the case at bar. If it can be assumed, as defendant argues, that its compliance with the Missouri statute provides a complete defense to the action in this case, a question of fact remains whether defendant did in fact act to protect plaintiff and not to subject her to discrimination. According to the charge filed by plaintiff with the Equal Employment Opportunity Commission, she was 'allowed to work all overtime available if I so requested' prior to February 10, 1967, but was denied any overtime after that date. Although the applicable statute was amended in 1967 to include, among other things, certain exemptions, it appears that the statute was applicable to defendant both before and after February 10, 1967. Therefore, the statute may not have been applied to protect plaintiff and the denial of overtime work may have been imposed without reference to the state statute and to discriminate against plaintiff. These questions of fact prevent the granting of a motion for summary judgment based on the defense of refusal [of overtime work] in accordance with the state statute. A question of fact exists with respect to the defense of reliance upon the statement of the EEOC issued August 19, 1966. Further, it does not appear conclusively that the EEOC was erroneous in finding 'probable cause' to believe that discriminatory practices existed, and that therefore defendant is entitled to judgment as a matter of law . . . ."

Further, under the facts which have now been stipulated by the parties, it is clear that, even if the plaintiff might currently be denied overtime work in reliance by defendant on the Missouri statute, such a denial is not in accordance with current federal principles and that plaintiff would therefore be entitled to a declaratory judgment to that effect and an injunction restraining the further refusal, if the denial were continu-

ing at the present time. The statute relied on by defendant, Section 290.040 RSMo, currently reads as follows:

"1. No female shall be employed, permitted, or suffered to work, manual or physical, in any manufacturing, mechanical, or mercantile establishment, or factory, workshop, laundry, bakery, restaurant, or any place of amusement, or to do any stenographic or clerical work of any character in any of the diverse kinds of establishments and places of industry, herein described, or by any person, firm or corporation engaged in any express or transportation or public utility business, or by any common carrier, or by any public institution, incorporated or unincorporated, in this state, more than nine hours during any one day, or more than fifty-four hours during any one week; provided, that operators of canning or packing plants in rural communities, or in cities of less than ten thousand inhabitants wherein perishable farm products are canned, or packed, shall be exempt from the provisions of this section for a number of days not to exceed ninety in any one year, and operators of floral establishments shall be exempted from the provisions of this section on certain holidays, namely: Mothers Day, Valentine's Day, Easter and Christmas and on occasions for funerals and weddings, not to exceed three days in any calendar week or a total of thirty days in any calendar year, and telephone companies shall be exempt from the nine hours during any one day provision of this section.

"2. Nothing in this section shall be construed to apply to telephone companies serving under seven hundred fifty stations, or to telephone companies in case of emergency."

■ In the light of current federal standards, substantial doubt is cast on the continuing validity of Section 290.-040 RSMo, on which, it is stipulated, defendant formerly placed "good faith reliance." The statute clearly purports to place industry-wide prohibitions on the overtime working of women. It is now well-settled that industry-wide exclusions of employment opportunity for women are not in accordance with current federal standards. Weeks v. Southern Bell Telephone & Telegraph Company (C.A.5) 408 F.2d 228, 235; Rosenfeld v. Southern Pacific Company (C.D. Cal.) 293 F.Supp. 1219; Richards v. Griffith Rubber Mills (D.Or.) 300 F. Supp. 338; Bowe v. Colgate-Palmolive Company (C.A.7) 416 F.2d 711; Shultz v. First Victoria National Bank (C.A.5) 420 F.2d 648, 656. But the rule was not always as clear as its enunciation in the above cases. This is reflected in the Statement of the Equal Employment Opportunity Commission of August 19, 1966, in which the Commission announced its policy of declining to determine the validity of state statutes in the absence of any judicial decision.

Further, it can be noted, that prior to late 1968, the few decisions which were reported in respect to industry-wide prohibitions of the working of women offered support to the proposition that such prohibitions were in keeping with federal law. For example, in Bowe v. Colgate-Palmolive Co. (S.D.Ind.) 272 F. Supp. 332, it was held that:

"Generally recognized physical capabilities and physical limitations of the sexes may be made the basis for occupational qualification in generic terms." 272 F.Supp. at 365.

But this broad construction of the proviso contained in Section 2000e–2(e) of Title 42, United States Code (permitting the employment by, e. g., sex discrimination if such is a "bona fide occupational qualification") has since either been expressly repudiated or not followed in Weeks v. Southern Bell Telephone & Telegraph Company, supra; Rosenfeld v. Southern Pacific Company, supra; Richards v. Griffith Rubber Mills, supra, and expressly reversed in Bowe v. Colgate-Palmolive Company (C.A.7) 416 F. 2d 711, which overturned in part the above decision of the Southern District of Indiana to the contrary. See also Shultz v. First Victoria National Bank

(C.A.5) 420 F.2d 648, 656. Those cases have also promulgated the rule that, as phrased in the guidelines of the national Commission, 29 C.F.R. § 1601.1(a):

"The principle of nondiscrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristic generally attributed to the group."

See, e. g., Weeks v. Southern Bell Telephone & Telegraph Company, *supra,* 408 F.2d at 235.

The same cases further have enunciated the rule that "[w]hen an employer discriminates against a person because of his or her sex, it has the burden of proving that sex is a 'bona fide occupational qualification reasonably necessary to the normal operation' of his business. 42 U.S.C. § 2000e–2(e). Weeks v. Southern Bell Tel. Co., 408 F.2d 228 (5th Cir. 1969)." Richards v. Griffith Rubber Mills, *supra,* 300 F.Supp. at 340. That burden is hardly met by the facts stipulated in the case at bar, in which it is agreed that plaintiff is a fully qualified mechanic who had the seniority and proficiency to entitle her to work overtime and who was not denied the right to do so because of any physical or mental characteristic peculiar to her as an individual, but only because of her sex.

Any award of relief in this cause, however, is governed by Section 2000e–5(g), of Title 42, U.S.C., which reads as follows:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice). Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex or national origin or in violation of Section 2000e–3(a) of this title."

But, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988, 995. This rule that the engagement in past or continuing unlawful acts must threaten irreparable injury has been followed in Equal Employment Opportunity cases. In Richards v. Griffith Rubber Mills, *supra,* an injunction was denied when plaintiff had been assigned to the position which she had asserted her right to occupy and when it was determined that the past engagement of defendant in unlawful employment practices had been in good faith. Cf. Bowe v. Colgate-Palmolive Company, *supra,* 272 F.Supp. at 338. This case at bar is unlike the cases of Cheatwood v. South Central Bell Telephone & Telegraph Company (M.D.Ala.) 303 F.Supp. 754; Rosenfeld v. Southern Pacific Company, *supra,* and other cases involving completed, past unlawful employment practices, such as refusal to hire, consider for a position or retain in a position or employment, which had continuing effects which threatened irreparable injury. In the case at bar, under the facts stipulated by the parties, it is neither stated nor inferable that the acts of discrimination against plaintiff in respect to working overtime are continuing. Plaintiff is stated to have

been refused the opportunity of working overtime, on her request, during the week of February 12, 1967. It is further stipulated that:

"Subsequent to the week ending February 12, 1967 there have been other occasions when plaintiff worked 54 hours and requested additional overtime which was available to male employees with less seniority, but which was refused to her by reason of defendant's compliance with the Missouri statute hereinafter mentioned, such overtime totaling $200.00 in additional salary if she had been permitted to work such overtime. Additionally, subsequent to the week ending February 12, 1967 plaintiff worked several 48-hour weeks but elected not to work overtime which was available to her for the reason that she would not have been permitted to work in excess of 54 hours on such occasions by reason of defendant's compliance with said Missouri statute, such overtime totaling $1,500.00 in additional salary if she had worked such overtime."

A total of $1,700.00 which is sought for back pay for refusals to award overtime opportunities from February 12, 1967, to the date of the filing of the complaint herein, October 2, 1969, hardly justifies the inference of a continuing violation in the light of the other facts stipulated. Further, the above stipulation is to the effect that no request to work overtime has been made by plaintiff since the enunciation of the current federal standards embodied in the cases cited above and in a new policy statement of the Equal Employment Opportunity Commission published in the Federal Register on February 24, 1968, rescinding a prior policy statement of August 19, 1966, on which the defendant, as it is stipulated herein, relied in good faith in refusing plaintiff overtime work. Also, the "decision" of the Equal Employment Opportunity Commission dated February 28, 1969, although listing the complaint as "continuing," limits its consideration of the alleged unlawful employment practices to the statement of plaintiff "that on various occasions in February and March of 1967 she was prohibited from working the same amount of overtime as male Mechanics." The "decision" is incorporated by reference into the stipulation. And defendant argues as follows in its brief on this point:

"The first case which held that a state maximum hour law violated Title VII of the Civil Rights Act of 1964 and was therefore invalid under the Supremacy Clause of the Constitution was Rosenfeld v. Southern Pacific Company, 293 F.Supp. 1219 (D.C.Cal. 1968). That case was not decided until November 22, 1968, which was well over a year after the events alleged by plaintiff in her complaint so that defendant did not have the benefit of any court interpretation at the time it acted in respect to plaintiff's request for work in excess of fifty-four hours a week."

Plaintiff did not contradict this statement in her reply brief. Further, although defendant indicates some disagreement on the applicability of *Rosenfeld* to this case (on the theory that the number of hours permitted by the Missouri statute is greater than that allowed under the California statute condemned in *Rosenfeld*), its brief evidences a present acceptance of current federal law and EEOC guidelines. Pertinently, the brief reads as follows:

"It was not until August 15, (sic) 1969, that the Commission took the position that state protective legislation would not be the basis for a bona fide occupational exception, and at all times prior to August 15, 1969, defendant believed that compliance with the Missouri maximum hour law was recognized by the Commission itself . . . ."

The complaint in this cause was filed on October 2, 1969. Therefore, because of the absence of a continuing violation of the Equal Employment Opportunity Act which threatens irreparable injury, plaintiff's request for an injunction must be denied.

Further, under the stipulation of facts submitted in this case, it must be concluded that defendant has not at any time "intentionally" engaged in an unlawful employment practice as required by Section 2000e–5(g), *supra*, to serve as the basis for relief in this case, if any is to be granted. As has been noted, the stipulated facts do not make a case of a presently continuing violation. They further do not make a case of a past intentional violation or act of discrimination. In Richards v. Griffith Rubber Mills, *supra*, 300 F.Supp. at 341, "intentionally" was interpreted to mean "wilfully and knowingly." In the case at bar, it is stipulated that defendant refused to grant plaintiff the opportunity to work overtime in "good faith reliance" on Section 290.040, *supra*; on an opinion of the Attorney General of Missouri dated January 31, 1967, in which it was stated that the Missouri statute consitutes and defines a "bona fide qualification" for the industries governed thereby; and on the statement of the Equal Employment Opportunity Commission dated August 19, 1966, in which it was stated in part that:

"In our Guidelines on Discrimination because of Sex, published in November, 1965, the Commission stated:

'The Commission does not believe that Congress intended to disturb such laws and regulations which are intended to, and have the effect of, protecting women against exploitation and hazard. Accordingly, the Commission will consider limitations or prohibitions imposed by such state laws or regulations as a basis for application of the bona fide occupational qualification exception. However, in cases where the clear effect of a law in current circumstances is not to protect women but to subject them to discrimination, the law will not be considered a justification for discrimination.' 30 F.R. 14927."

"Since that time, in processing such cases, we have scrutinized carefully employer claims that discrimination was compelled by state law, and we have sought practical solutions which would enable employers to comply with both Title VII and State laws. To that end we have insisted that employers who rely on state law as a basis for unequal treatment of female employees seek such administrative exceptions as are available, and we have encouraged state legislatures and administrators to provide for more flexibility in their laws and regulations. We have, however, refrained from ruling squarely on the situation in which the conflict between Title VII's demand for equal employment opportunity and the requirements of state law is complete and unresolvable.

"The Commission now has before it a case involving a charge of discrimination based on sex, in which the facts indicate that the female charging parties are being denied promotional opportunities and the opportunity to earn premium pay for overtime. The respondent employer admits these facts but urges as justification the provisions of the California Labor Code which provide that female employees may not be employed more than eight hours in any day or 48 hours in any week.

"The Commission finds further that the employer's overtime requirements for the jobs sought by the charging parties are legitimate and bona fide and that no administrative exceptions are available under California law. There is no suggestion in the facts before us that the health or welfare of the charging parties would be adversely affected by permitting them to work in excess of 48 hours a week. This case therefore, poses squarely the question whether Title VII supersedes and in effect nullifies a state law which compels an employer to deny equal employment opportunity. For the reasons which we set forth, we are not able at this time to resolve this question.

"Over forty states have laws or regulations which, like California's, limit

the maximum daily or weekly hours which women employees may work. What effect Congress intended Title VII to have upon such laws is not clear. An intent to alter drastically this pattern of state legislation should not lightly be presumed. However, the Commission believes that in fact these laws in many situations have an adverse effect on employment opportunities for women. To what extent this adverse effect is counterbalanced by the protective function which these laws serve this Commission is not presently in a position to judge. A choice between these two competing values could probably be avoided if these protective laws were amended to provide for greater flexibility, but the Commission cannot rewrite state laws according to its own views of the public interest.

"The Commission's functions in processing charges under Title VII are limited to investigation, determining whether there is reasonable cause to believe a violation has occurred, and conciliation. While we have a duty to interpret Title VII, we have no authority by such an interpretation to insulate employers against possible liability under state law, nor do we have authority to institute in the name of the Commission suits to challenge or restrain the enforcement of state laws.

"Therefore, in the instant case and in cases which pose the same issues, the Commission is not prepared to make a determination with respect to the merits of the case, but shall advise the charging parties of their right to bring suit within 30 days under Section 706(e) of Title VII to secure a judicial determination as to the validity of the state law or regulation. Such litigation to resolve the uncertainties as to the application of Title VII seems desirable and necessary, and the Commission reserves the right to appear as *amicus curiae* to present

its views as to the proper construction of Title VII."

As is noted above, the ambiguity of the federal standard which was expressed in this statement was not resolved until November 22, 1968, when the United States District Court for the Central District of California handed down its decision in Rosenfeld v. Southern Pacific Company, *supra*, the same case in which the EEOC had declined to make a decision and had issued the statement of August 19, 1966, *supra*, in respect thereto. In *Rosenfeld*, it was specifically found that the defendant company in that case, unlike the defendant in the case at bar, "did not rely on any written interpretation or opinion of the Commission within the meaning of Section 713 of Title VII of the Civil Rights Act of 1964." 293 F.Supp. at 1224.

Meantime, however, before the decision in *Rosenfeld*, defendant, during the week of February 12, 1967, refused plaintiff the opportunity to work overtime in excess of 9 hours per day or 54 hours weekly. As has been noted in the order denying defendant's motion for summary judgment, the fact that plaintiff was allowed to work all the overtime which she requested prior to February 10, 1967, but not after February 12, 1967, (a fact which is evidenced by her "charge of discrimination" dated March 10, 1967, which is attached to the stipulation and incorporated therein by reference) may raise doubts whether defendant did in fact rely either upon Section 290.040 RSMo or the policy statement of August 19, 1966, both of which had been in effect long prior to February 12, 1967. It appears, rather, that defendant, in refusing plaintiff the right to work overtime, acted in reliance upon the opinion of the Missouri Attorney General which was issued on January 31, 1967. Whether a plenary evidentiary hearing would demonstrate defendant's reliance on the opinion to have been "good faith" reliance is immaterial.[4] The parties have elected to

---

4. The opinion of the Attorney General of Missouri places wholesale reliance upon

the EEOC statement of August 19, 1966, as a basis for its conclusion that the

be bound by the stipulated facts that plaintiff requested and was refused overtime work in excess of 54 hours weekly and 9 hours daily in "good faith reliance" on the opinion of the Missouri Attorney General, as well as upon the Missouri statute and the 1966 statement of the EEOC, which can only be fairly construed as a specific refusal of the national Commission to pass upon the validity of state statutes of the type involved in this case and a deferral of that question for future determination by the courts.

Further, as defendant notes in its brief (without contradiction by plaintiff), no judicial decisions, at the time of the events alleged in this action, shed any light on the question. In fact, this Court must note that the district court decision in Bowe v. Colgate-Palmolive Company, *supra*, entered on June 30, 1967, during the pendency of the *Rosenfeld* case, supported the position of the defendant, as noted above, before its reversal by the Seventh Circuit Court of Appeals on September 26, 1969. The district court decisions in Weeks v. Southern Bell Telephone & Telegraph Company (S.D.Ga.) 277 F.Supp. 117, and Mengelkoch v. Industrial Welfare Commission (C.D.Cal.) 284 F.Supp. 950, may have offered other measures of support of defendant's position at this point in time. In such an instance, when the law was in doubt and the fact of the am-

biguity was expressed by a statement of the national Commission, it is impossible that defendant could have "knowingly" violated it, as the case of Richards v. Griffith Rubber Mills, *supra*, requires as a condition of an intentional violation within the terms of Section 2000e–5, *supra*.

Plaintiff, however, contends that "intentional" should not mean "wilfully and knowingly" but rather "not innocently." Apart from the unlikelihood that the law would, without precedent, impose such a vague definition of "intentional," the Court must note that nothing but an innocent violation of the Act can be found under the stipulated facts when defendant could have hardly had clear and certain knowledge of the yet-undetermined (as of that time) federal law and when it stood subject to criminal liability for violations of the Missouri statute.[5]

Further, even assuming that the acts of discrimination were carried out "intentionally" within the meaning of the federal statute, defendant has a complete defense under § 2000e–12(b) (1), which provides as follows:

"In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of . . . the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of

---

Missouri statute was not in conflict with Title VII of the Civil Rights Act of 1964. In particular, it appears to rely on the portion of the 1966 statement which is to the effect that the EEOC has "no authority . . . to insulate employers against possible liability under state law." Therefore, it would seem doubtful that reliance on the opinion of the Attorney General was in good faith when it appears unlikely that the EEOC statement which the Attorney General relied on, was not relied on at all by defendant, except as stipulated. The stipulation must be regarded as conclusive on this issue, any speculation from the contents of the respective statements to the contrary notwithstanding.

5. Plaintiff also contends that the Missouri statute could not have been conceivably thought by defendant to apply as a protective measure in this case because the "bona fide qualification exemption" of Section 2000e–2(e), Title 42, U.S.C., applies to the obligation to "hire and employ" an individual rather than to any issue of working overtime. But the contracting for overtime work cannot be deemed to have been without the meaning of "hire and employ" in the minds of the defendant's officers, particularly when the issues in this case are not whether the statute was valid and applicable, under the stipulation of the parties, but whether defendant violated the act intentionally and whether its action was in good faith reliance on the 1966 statement of the EEOC.

was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission."

As noted above, plaintiff has stipulated that defendant relied on the policy statement of the EEOC of August 19, 1966, in good faith. In her reply brief, plaintiff admits that the good faith reliance on the statement of August 19, 1966, complies with every aspect of the above section, except that the act or omission was not "in conformity with" the August 19, 1966, statement. Plaintiff, in this respect, argues as follows:

"By [the policy statement] it is shown that in the guidelines of December 2, 1965, the Commission declared a policy of not finding unlawful employment practices in situations such as exist in the instant case. However, on August 19, 1966, the guidelines (relied upon by defendant) were adopted and, as was clearly shown in plaintiff's brief, declared that the Commission would not make determinations on the merits one way or the other in cases such as the instant one, but 'in such cases the Commission would advise charging parties of their right to bring suit within thirty days . . . .'. Thus, it is clear, that defendant's refusal to permit plaintiff to work overtime was not 'in conformity with' the guideline of August 19, 1966."

The file herein shows, however, that defendant pleaded the defense with precision in its answer filed herein on October 23, 1969; that, in the statement of August 19, 1966, the national EEOC specifically refrained from clarifying the state of the federal law and simultaneously warned that it could not "insulate employers against possible liability under state law"; and that, on January 31, 1967, the Missouri Attorney General announced that the Missouri statute was valid and "not inconsistent" with the na-

tional Act. In such a situation, defendant's actions, if it relied on these pronouncements in good faith, was certainly in conformity with the statement of August 19, 1966, and constituted a reasonable choice thereunder, in view of the possible liability under Missouri law [6] which it was liable to incur as a result of the combined effect of the statement and the Missouri Attorney General's opinion. See Section 2000e–7, which reads as follows:

"Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, *other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.*" (Emphasis added.)

Plaintiff seizes on the emphasized language to state that the section is inapplicable to this case. But as is stated above, whether the Missouri statute permitted or required an unlawful employment practice within the meaning of the Act was not clear.

Further, as defendant has pointed out in its brief, the Guideline of December 2, 1965, wherein the EEOC stated that state laws and regulations would be considered as possible bases for the application of the bona fide occupational qualification exception, remained in effect alongside the statement of August 19, 1966. It was quoted by the August 19, 1966, statement as the substantive basis for that statement. The only significant change made in the 1965 statement by the 1966 statement was the procedural change whereby the Commission announced its determination not to make any decisions on the merits. On February 24, 1968, the August 19, 1966, guideline was rescinded and that of December 2, 1965, was reaffirmed. As the Com-

---

6. Section 290.050 RSMo provides that a violation of Section 290.040 RSMo is a misdemeanor and that conviction carries a fine of not less than $25 nor more than $100 for each offense.

mission noted in rescinding the 1966 statement:

"The rescission of the August 19 policy statement means that in cases where the effect of State protective legislation appears to be discriminatory rather than protective, the Commission will proceed to decide whether that legislation is superseded by the Act. In such situations the Commission expects to solicit the views of the relevant State authorities in respect to the purpose and effect of the State legislation."

Even at that date, however, the principle which might conceivably have invalidated the Missouri statute had not yet been formulated as a matter of substantive law, and it was not formulated until the *Rosenfeld* case was decided. Defendant's actions were in conformity with the policy statement of August 19, 1966, as well as that of December 2, 1965.

█ In its *amicus curiae* brief, the Equal Employment Opportunity Commission contends that the statement of August 19, 1966, is not "such a 'written interpretation or opinion of the Commission' as is contemplated by [§ 2000e–12(b)]. The Commission has construed the meaning of the phrase 'written interpretation or opinion of the Commission' and has published its construction in the Federal Register:

"Only (a) a letter entitled 'opinion letter' and signed by the General Counsel on behalf of the Commission or (b) matter published and so designated in the Federal Register may be considered a 'written interpretation or opinion of the Commission' with[in] the meaning of [§ 2000e–12(b)] of Title VII. 29 C.F.R. § 1601.30."

In Air Transport Association of America v. Hernandez (D.D.C.) 264 F.Supp. 227, 229, however, it was held that an interpretation of the Commission, "no matter what its administrative nomenclature, . . . has the effect of law." See also American Newspaper

Publishers Association v. Alexander (D.D.C.) 294 F.Supp. 1100. It appears that the Commission cannot make and publish in any form written interpretations and then restrict their legal effect within the meaning of Section 2000e–12(b) when they are relied on by the public. Further, the guideline of December 2, 1965, which was quoted in that of August 19, 1966, as the substantive basis of the later guideline, and upon which defendant must therefore be deemed to have relied on in good faith, was published in the Federal Register. See 29 C.F.R. § 1604.

The Commission also cites Rosenfeld v. Southern Pacific Company, *supra*, for the proposition that Section 2000e–12(b) can in no case provide a defense to a suit for injunction, declaratory judgment or other "claim for relief running *in futuro*." The Commission relies on the finding in *Rosenfeld* that Section 2000e–12(b) was inapplicable in that case "insofar as said action is an action for declaratory and other prospective relief." 293 F.Supp. at 1224 It further relies on the language of the section which states that a written interpretation of the Commission provides a defense to any "liability or punishment." But in *Rosenfeld,* it was specifically found that the defendant against whom relief was granted, "did not rely on any written interpretation or opinion of the Commission within the meaning" of Section 2000e–12(b). 293 F.Supp. at 1224. And if the *Rosenfeld* case intended to restrict the term "liability" to a meaning of relief for damages, the holding is contrary to the weight of authority which defines "liable" as "bound or obliged in law or *equity*; responsible; chargeable; answerable; *compellable* . . . ." (Emphasis added.) See Black's Law Dictionary, p. 1060 (4th ed.). However, because of the holding that, under the facts stipulated in this case, no threat of irreparable injury is shown,[7] this contention need not be ruled on by the Court.

---

7. It is to be noted that the decisions made in Weeks v. Southern Bell Telephone & Telegraph Company (C.A. 5) 408 F.2d 228; Shultz v. First Victoria National

It is to be noted that plaintiff has attempted to present a case to the Court in which the Court would be compelled to pass on the validity of Section 290.-040 RSMo in the light of current federal standards. But she has not presented a case to the Court in which the validity of that statute, either under current standards or retroactively, is shown, because, under the facts stipulated, it cannot be concluded that defendant violated the Act intentionally nor that it did not rely on the policy statement of the EEOC in good faith and in conformity therewith. Under the stipulations made, for the time periods in question, the question of whether the Missouri statute actually did create a bona fide occupational qualification is irrelevant to the issues in this case. It is perhaps regrettable that in the enthusiasm to bring the issue of the current validity of the statute before the Court, a factual case which might have otherwise established an intentional violation of the Act by defendant was not presented.[7]

Further, it is not altogether clear that, even if the issue of the validity of the Missouri statute were raised relevantly to the issues in this case, that this Court's ruling would be proper at this time. It does not appear that Section 290.040 has yet been construed by the courts of Missouri in a published decision. It is not inconceivable that the statute could be construed in such a way that it is consistent with current federal standards or that it might be declared invalid by a Missouri court. Therefore, although this Court is not required to pass on this particular issue in the case at bar, it appears that the doctrine of abstention may apply in view of the unsettled state of the Missouri law and the absence of a Missouri court ruling on the statute. See Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68; Rodgers v. Danforth (W.D.Mo.) Civil Action No. 18360–2. In Chief Freight Lines Co. v. Missouri Highway Reciprocity Commission (W.D.Mo.) 311 F.Supp. 1128, this Court held that the doctrine of abstention applied in a case involving construction of a Missouri statute, in the absence of a decision construing the statute by a Missouri tribunal, wherein no irreparable injury was threatened. The absence of any threat of irreparable injury may distinguish this case from Rosenfeld v. Southern Pacific Company, *supra*, wherein the abstention doctrine was held inapplicable in a case where irreparable harm was threatened.

After the entry of the foregoing findings, however, the parties filed a supplemental stipulation of facts, on

Bank (C.A. 5) 420 F.2d 648; and Bowe v. Colgate-Palmolive Company (C.A. 7) 416 F.2d 711, involved factual situations which antedated November 22, 1968, and the Court still awarded relief to the plaintiffs. But in none of those cases, apparently, was there any question of the violations being unintentional. (In *Bowe*, for instance, they are described as "blatant". 416 F.2d at 719) nor was the issue of the defense of "good faith reliance" in conformity with a guideline of the EEOC brought into play. In the case at bar, however, the stipulation made by the parties has made consideration of those issues unavoidable, and in that respect, this case is distinguished from those holdings.

Plaintiff has also attached several decisions of the EEOC rendered since the date of the Rosenfeld v. Southern Pacific Company (C.D.Cal.) 293 F.Supp. 1219, to her brief. Many of these decisions find reasonable cause to believe the Act has been violated by means of sex discrimination in employment which was imposed on the basis of a state statute. Some of the decisions involve factual situations antedating the *Rosenfeld* decision. But the defense of good faith reliance and the issue of whether the violation was intentional were apparently not considered in these cases either. Even if those issues were considered, however, it appears that the decision of the Commission with respect to those issues could have little or no precedential value for this Court when, as the Commission has noted in its 1966 statement, its functions in this respect are restricted to finding whether reasonable cause exists to believe the Act has been violated. Whether the violation has been "intentional" and whether the defenses outlined by the Act apply appear to be for the Court to decide under Section 2000e–5(g).

plaintiff's motion to amend judgment in which it was stipulated and agreed (1) that the original stipulation "is unclear in certain respects"; (2) that the policy of defendant to refuse women overtime in excess of 54 hours weekly was not changed until the filing of the original Memorandum Finding of Fact, Conclusions of Law and Judgment in this case; and (3) "The relief, if any, to which plaintiff is entitled by reason of defendant's continuation of said policy is declaratory relief only and attorney fees, not monetary damages." In view of the admission therein that defendant's policy remained unchanged past the dates of the decision in *Rosenfeld, supra*, and the change of policy guidelines by the EEOC, plaintiff is entitled to a declaratory judgment that the policy, as continued past that date, was illegal. Insofar as § 290.040 RSMo would compel defendant to uniformly deny women employees the right to work in excess of 54 hours weekly, it is invalid and provides no defense in this action. Plaintiff herself, however, did not request and was not refused overtime during these dates. Injunctive and other relief, under such circumstances, must be denied. Parham v. Southwestern Bell Telephone Company (C.A.8) 433 F.2d 421; Rosen v. Public Service Elec. & Gas Co. (C.A.3) 409 F.2d 775; cf. Quarles v. Philip Morris, Inc. (E.D.Va.) 279 F.Supp. 505.

For the foregoing reasons, it is

Adjudged that judgment be, and it is hereby, entered in favor of defendant herein and against plaintiff on all claims for relief herein except the claim for declaratory judgment and that plaintiff have and recover nothing of and from the defendant in the form of back pay, although the question of attorney's fees is hereby expressly reserved for later decision. It is further

Ordered, declared and adjudged that the policy of defendant to refuse women the right to work in excess of 54 hours weekly, as it continued past the decision in Rosenfeld v. Southern Pacific Company, *supra*, and the change in policy guidelines of the Equal Employment Op-

portunity Commission in August 1969, was in fact unlawful, and that insofar as Section 290.040 RSMo would compel defendant to uniformly deny women employees the right to work in excess of 54 hours weekly, it is invalid and provides no defense in this action.